## W. B. PENISTON v. CITY OF MARSHALL AND OTHERS.[1]

June 22, 1934.

Nos. 29,875, 29,883.

*J. F. Boyles* and *M. E. Brooks,* for relators City of Marshall and Maryland Casualty Company.

*Briggs, Weyl & Briggs,* for relators City of Marshall and Standard Accident Insurance Company.

*Hall & Catlin* and *B. W. Coderre,* for respondent.

*JULIUS J. OLSON, Justice.*

*Certiorari* to review an order of the industrial commission awarding respondent compensation.

W. B. Peniston, employe-respondent, is a long-time resident of the city of Marshall, this state, and for many years served as a member of its police department. On January 28, 1930, while so employed, he suffered an accidental injury arising out of and in the course of his employment. At that time and until December 5, 1932, relator Maryland Casualty Company was the insurer of the city's liability as employer. Thereafter the Standard Accident Insurance Company became such. Peniston made no application for compensation at the time of receiving the injury nor for some months thereafter. His injury was caused by a fall whereby his right foot came in contact with a curb in the city. Instead of calling for

[1]Reported in 255 N. W. 860.

and receiving medical aid, he took care of the injured member himself, assisted by his wife and son. They dressed the foot frequently, usually once a day, but he continued his work until May, 1930, when his condition became such that he had to call for medical aid, and his family doctor, B. C. Ford, was called upon to render professional service. He treated Peniston over a period of time, about a month, from May 14 to June 9, at which time Peniston was sufficiently improved so that he returned to work. From August 30 to October 27 he was again incapacitated because of the injuries first mentioned. Dr. Ford at that time diagnosed his case as one of acute osteomyelitis. Toward the end of October Peniston's condition had sufficiently improved so that he was able to return to his work and continued same until January 4, 1933. During all of the intervening time, however, he had more or less trouble with his foot. It required frequent dressing, and there was an almost constant discharge of pus; but, as stated, he was on the job performing his regular work and drawing his regular pay.

In the latter part of December, 1932, and in the early part of January, 1933, Peniston suffered further accidental injuries arising out of and in the course of his employment. The dates are not quite definitely fixed in the testimony, but it is safe to say that the injuries occurred on or between December 28, 1932, and January 3, 1933. The referee acting for the industrial commission found the facts to be substantially as above stated and further that the first accident resulted in "a condition of osteomyelitis, both chronic and acute, of the right foot"; that the injuries occurring on and between December 28, 1932, and January 3, 1933, "were superimposed on the condition then existing therein, and served to add to and to complicate said condition." There is evidence in the case amply justifying this conclusion. As a matter of fact there is no question but that the city of Marshall as employer is responsible for the compensation here allowed, and the sole difficulty arises by reason of the discordant claims of the two insurers. The Maryland Casualty Company takes the position and strongly urges that Peniston had recovered from his injuries and that as such its liability was at an end. The other insurer, Standard Accident Insur-

ance Company, is equally certain in its contention that the employe's condition is due entirely to the injury that he suffered on January 28, 1930, and that as a consequence it should not be held to liability. It should be added here that the referee also found:

"That said petitioner shortly after January 28, 1930, suffered a chronic and acute osteomyelitis, which was not always disabling but which, nevertheless, continued as an active agent for disease, necessitating care and treatment almost continuously until December 28, 1932, and January 3, 1933, and at no time did said condition clear up or become healed or cured; that on December 28, 1932, and January 3, 1933, said condition was an active agent for disease and disability."

Liability was found to exist as against the employer, and the burden of this liability was divided equally between the two insurers at the rate of $13.21 per week from January 4, 1933, to continue "so long as such disability continues, subject, however, to the terms and limitations of the workmen's compensation act."

The testimony is in conflict to some extent but not hopelessly so. The difference is in degree rather than kind. So the question becomes one of whether the employe's present condition is due entirely to the accident of January, 1930, or if that condition was "superimposed" by the subsequent accidents occurring in December, 1932, and January, 1933. Dr. Ford testified that he considered the patient's condition had become latent when Peniston returned to work in October, 1930. Regarding the subsequent injuries, the doctor testified:

Q. "Now, this jumping over the ditch, or stubbing the toe, did you find anything to indicate that that had in any manner injured his foot on the 4th of January, when you examined him?

A. "Well, that was my opinion, that this injury, reinjuring that foot, was the thing that caused the acute flare-up.

Q. "Created this flare-up?

A. "Yes. When once you have had osteomyelitis in the bone it don't take much of an injury to flare that up again. That has been latent there and had not entirely healed in that two-year

period, and in my opinion that started the last flare-up, striking that foot on the gravel, or stumbling over the ditch, it's pretty hard to know just what did, but a couple of days later he began to have that acute condition.

Q. "Simply aggravated that old condition?

A. "Yes."

Dr. Sanderson, also testifying for the employe, said that in his opinion the osteomyelitis was caused by the first accident, that the same had never been cleared up from its inception, and further that a subsequent injury could cause the "acute flare-up." In the opinion of both doctors the employe's condition at the time of the hearing was considered one of total disability. There is medical testimony to the contrary, but of course our inquiry is necessarily limited to whether there is evidence reasonably supporting the conclusion reached by the trier of fact. Note should also be made here that an appeal was taken by each of the insurers to the industrial commission and the findings of the referee in all things confirmed.

No necessity appears to exist for further discussion of the evidence. It is sufficient to say that in our opinion the findings of the referee and the order of the industrial commission are based upon facts reasonably sufficient to sustain the conclusion reached. An exhaustive discussion of previously decided cases is not deemed of value to the profession nor to the parties, but the following have a bearing upon the issues here: Luks v. Western C. S. C. Co. 165 Minn. 354, 206 N. W. 433; Walker v. Minnesota Steel Co. 167 Minn. 475, 209 N. W. 635; Smith v. Mason Bros. Co. 174 Minn. 94, 218 N. W. 243; Martin v. St. Paul Wreckage Co. Inc. 178 Minn. 279, 226 N. W. 767.

The writ is discharged and the award of the commission affirmed. Respondent will recover $100 attorneys' fees in this court plus statutory costs and taxable disbursements.