RICHARD CARPENTER v. ARROWHEAD STEEL
PRODUCTS COMPANY AND ANOTHER.
INDEMNITY INSURANCE COMPANY OF NORTH AMERICA,
RELATOR.[1]

March 22, 1935.

No. 30,218.

[1]Reported in 259 N. W. 535.

*G. P. Mahoney,* for relator.

*Ossanna, Hall & Hoaglund* and *Charles E. Carlson,* for respondent employe.

*Cobb, Hoke, Benson, Krause & Faegre* and *W. O. Rogers,* for respondent New Amsterdam Casualty Company.

HOLT, JUSTICE.

*Certiorari* to review a decision of the industrial commission.

Of these facts there is no dispute: During all the time here involved Richard Carpenter was in the employ of the Arrowhead Steel Products Company. The two will hereinafter be referred to as employe and employer. Previous to December 4, 1931, and up to some time after January, 1932, the relator was the employer's insurer against industrial accidents to its employes, and from that time on the New Amsterdam Casualty became the insurer. On December 4, 1931, the employe received an injury from an accident arising out of and in the course of his employment. For this he received compensation and medical treatment, and on February 2, 1932, returned to the employment. On February 24, 1933, he suffered another injury in an accident also arising out of and in the course of the employment. For the temporary disability and medical treatment arising therefrom compensation was received, and he returned to work, but the injury developed into permanent partial disability on June 10, 1933. No one questions the right of the employe to compensation on account of this permanent partial disability except relator, who claims it to be the result solely of the second injury. This finding of fact is challenged as not sustained by the evidence:

"That on June 10, 1933, the employe became disabled as a result of the accidents of December 4, 1931, and February 24, 1933, and continued to be so disabled until the date of the hearing herein on January 4, 1934."

For the permanent partial disability developed since June 10, 1933, and the medical treatment therefor, the industrial commission determined that the two insurance companies should bear

equally. With this decision the employer and the New Amsterdam Casualty Company are content, but relator is not.

The injury from the first accident was a direct right inguinal hernia, which was operated. And the claim of relator is that a permanent cure was effected so that the disability from which the employe has suffered since June 10, 1933, resulted solely from the second accident. We do not understand relator to contend that the decision that compensation and medical treatment since June 10, 1933, should be borne in equal parts by the two insurance companies is wrong if the quoted finding is sustained by the evidence. To ascertain whether the evidence sustains the finding mentioned, it is necessary to examine the medical testimony respecting each injury and the condition in which the operation to cure the first injury left him and its effect upon the result of the operation for the second. The second accident happened in this fashion: On February 24, 1933, the employe was carrying a heavy basket of steel filings, his foot caught in a defect in a rack on the floor, and he stumbled forward, falling so that his abdomen struck across a bucket standing on the floor. This resulted in opening the place of the right inguinal hernia operation and also caused a direct left inguinal hernia. There was an operation to cure the last injury. The operation did not prove a cure. The surgeons ascribe this in part to the first injury and the conditions resulting from the operation to cure the same. Relator called no medical expert. The employe had one, the New Amsterdam Casualty Insurance Company one, the surgeon who had performed both operations, and the commission called in Dr. Bratrude, the surgeon in charge of the hernia clinic at the University of Minnesota, as a neutral expert. The doctors practically agree that there is permanent partial disability; that both hernias were direct; that in such hernias the cure, whether by operation or other methods, is more difficult and the hazard of recurrence is greater than in indirect hernias. Dr. Bratrude testified that in direct hernia operations the recurrence is about 50 per cent. There was no evidence disputing the testimony that operations for direct hernia leave scar tissue, and other conditions, so that an operation for recurring hernia is ren-

dered more difficult and uncertain as to cure. No useful purpose would be served by going into the details of the testimony of the medical experts. The above statement embodies the result of their conclusions. In our opinion it warrants the finding quoted to the effect that the two accidents combined to produce the permanent partial disability now existing. This is not a case where an outside intervening cause has disabled or contributed to disable an employe who otherwise might have completely recovered from an accidental injury sustained in his employment, as in the case cited of Kill v. Industrial Comm. 160 Wis. 549, 152 N. W. 148, L. R. A. 1916A, 14. We do not consider the proof of the connection of the first accident with the employe's present condition insufficient, as it evidently was in Pacific Coast Cas. Co. v. Pillsbury, 171 Cal. 319, 153 P. 24, cited by relator. Peniston v. City of Marshall, 192 Minn. 132, 255 N. W. 860, comes closer but does not cover the precise question before us.

The writ is quashed, and the decision is affirmed.