HAROLD J. HEGDAHL v. CITY OF MINNEAPOLIS.
STATE TREASURER, CUSTODIAN OF THE SPECIAL
COMPENSATION FUND.

129 N. W. (2d) 798.

June 26, 1964—No. 39,283.

*Walter F. Mondale,* Attorney General, and *O. T. Bundlie, Jr.,* Special Assistant Attorney General, for relator.

*Keith M. Stidd,* City Attorney, and *G. V. Johnson,* Assistant City Attorney, for respondent employer.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission determining that the city of Minneapolis as employer of Harold J. Hegdahl, permanently and totally disabled by reason of an injury arising out of and during the course of his employment as a fireman on May 3, 1959, was entitled to relief as against the special compensation fund pursuant to Minn. St. 176.13.[1]

---

[1]Minn. St. 176.13 provides in part: "(a) If an employee who has a physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for permanent or temporary partial or total disability that is substantially greater by reason of the combined effects of the pre-existing impairment and subsequent injury than that which would have resulted from the subsequent injury alone in the absence of the pre-existing impairment, the employer or his insurance carrier shall in the first instance pay all compensation provided by this chapter, but such employer or his insurance carrier shall be reimbursed from the special compensation fund for all compensation subsequent to those payable for the first 104 weeks of disability, except that if the subsequent injury alone results in permanent partial disability the employer or his insurer shall not be reimbursed for that part of the compensation payable therefor as may be in excess of the first 104 weeks as provided by section 176.101, subdivision 3 (sections 1-42).

"(b) If the subsequent injury of such an employee shall result in the death or permanent partial or total disability of the employee and it shall be determined that either the injury, death or disability would not have occurred except from pre-existing physical impairment, the employer or his insurance carrier shall in the first instance pay the compensation pre-

The employee, 48 years of age, joined the Minneapolis Fire Department in 1940. Except for his military service, he worked as a fireman for the city until June 4, 1957, when he suffered a coronary thrombosis causing an anterior myocardial infarction. He was off work for nearly 7 months, drawing sick leave and disability payments equal to his full salary. Beginning in December 1957 he performed fire inspection duties until March 1958, when he was permitted to return to his former role as a firefighter. On April 23, 1958, the employer registered with the Industrial Commission under § 176.13(c) the employee's "myocardial infarction." On May 3, 1959, after responding to a fire call requiring considerable physical exertion, the employee suffered a second coronary occlusion which caused a posterior myocardial infarction. He has been permanently totally disabled since that time. The employer commenced payment of workmen's compensation, and within 52 weeks of the May 3, 1959, accident, filed a written notice of intention to claim reimbursement from the special fund after 104 weeks of compensation as provided by § 176.13. The special fund denied liability and the matter was referred to a referee of the Industrial Commission for hearing.

Only one medical witness, Dr. Gordon G. Bowers, a Minneapolis internist, testified with respect to the medical aspects of the case. He related that in December 1957, when the employee returned to work, the infarction had "healed," but that, scar tissue having replaced the deteriorated muscle tissue in the anterior portion of the heart, the normal elasticity of this organ was decreased and the heart was not as good

---

scribed by this chapter, but he or his insurance carrier shall be reimbursed from the special compensation fund for all compensation payable in excess of 104 weeks.

"(c) In order to qualify under this section for reimbursement from the special compensation fund, the employer * * * must register with the industrial commission, in advance of any subsequent injury * * * the names of his employees with a pre-existing physical impairment, together with satisfactory evidence of such impairment, * * *.

"(d) As used in this section 'physical impairment' means any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment."

functionally as it had been before the incident of June 4, 1957. Although an electrocardiogram taken a few months before the 1959 occlusion was characterized as "normal," the damage to the heart as a result of the June 4, 1957, occurrence was permanent, and as a result the employee was "more prone to have another attack." He described the situation in this way:

"Well, here is a man with a heart that we know has been impaired from a previous attack of coronary thrombosis, and he has been subject to an increased physical load, and physical stress, not only muscular, with the arms and legs and pumping and walking, but it also puts an undue extra stress on the heart muscle in doing its work. Its work output has to be increased under the circumstances and here is a heart that is probably on the borderline, receiving a little less than normal amount of blood supply to the heart muscle, and as a result, it began to manifest itself with heart symptoms. In my opinion, I think the extra stress probably precipitated the second attack in the presence of the already diseased or impaired condition in the heart and blood vessels supplying the heart muscle."

Although concessions made by Dr. Bowers on cross-examination reflect that he was unable to find a relationship between the first myocardial infarction and the incident of May 3, 1959, with mathematical certainty, his opinion and reasoning were expressed with sufficient definiteness and clarity to justify the Industrial Commission in finding as it did, that the employee's subsequent injury of May 3, 1959, and the resultant disability would not have occurred except for the heart damage sustained on June 4, 1957. It is our conclusion that the decision of the Industrial Commission should be affirmed. The myocardial infarction resulting from the coronary occlusion of June 4, 1957, was a "physical impairment from any cause or origin" within the meaning of § 176.13(a), and, in light of the testimony of Dr. Bowers, this physical impairment was existent and causative on May 3, 1959.

The fact that the employee was examined by a physician designated by the relator who was not called as a witness is of significance where the testimony of Dr. Bowers, the attending physician, is subjected to refined and critical analysis by relator.

The decision of the Industrial Commission does not imply that recourse to the special compensation fund may be had in every case where an employee is impaired physically by reason of an established occupational disease, even though a basic cause of the employee's experiences of June 4, 1957, and May 3, 1959, was the existence of coronary arteriosclerosis, considered to be an occupational disease to which persons employed in such occupations as firemen are particularly disposed. The physical impairment specified by the city of Minneapolis in its notice was not coronary arteriosclerosis but rather "myocardial infarction." The medical definitions of the terms make the distinction evident.[2] We do not attempt to decide what the result in this case would have been in a situation different from that disclosed by this record.

Relator expresses concern that the special fund will be unduly burdened by a decision which permits recourse to it under the facts of this case. The "subsequent or successive injury"[3] statute was adopted to meet situations of the kind presented here. Without it, a person in the position of the employee here—with a history of coronary occlusion and consequent myocardial infarction resulting in 33 days of hospitalization in 1957 and inability to work for nearly 7 months—would have difficulty in continuing his employment or finding other work. The purpose of the enactment of § 176.13, which is to encourage employers to afford employment opportunities without being deterred by an established physical impairment, would seem to apply in this case as much as in any other. The determination of the Industrial Commission that the city of Minneapolis is entitled to recourse as against the special compensation fund as provided by § 176.13, is, therefore, affirmed.

Affirmed.

---

[2]*Myocardial:* Pertaining to the muscular tissue of the heart. *Infarction:* The formation of an infarct. *Infarct:* An area of coagulation necrosis in a tissue due to local anemia resulting from obstruction of circulation to the area. *Arteriosclerosis:* A condition of thickening of the coats of the arteries with inflammatory changes, degenerative or productive. Dorland, The American Illustrated Medical Dictionary (15 ed.).

[3]See, Luthens v. Glencoe Red & White Store, 264 Minn. 26, 117 N. W. (2d) 386; McGuire v. Viking Tool & Die Co. 258 Minn. 336, 104 N. W. (2d) 519.