### PHYLLIS L. BESON v. CARLETON COLLEGE AND ANOTHER.
### STATE TREASURER, CUSTODIAN OF SPECIAL COMPENSATION FUND.

136 N. W. (2d) 82.

May 28, 1965—No. 39,455.

*Lawrence Hazen, Wayne P. Dordell,* and *Hansen & Hazen,* for relators.

*Robert W. Mattson,* Attorney General, and *James A. Anderson,* Special Assistant Attorney General, for respondent State Treasurer.

SHERAN, JUSTICE.

Certiorari to review a decision of the Industrial Commission.

The issue presented is whether the provisions of Minn. St. 176.13(c), requiring notice of intention to claim reimbursement from the special compensation fund within 52 weeks from the date of the injury giving rise to the reimbursement claim, can be considered directory rather than mandatory when (a) the failure to give notice within the time specified was not due to fault on the part of the employer-insurer involved; (b) the notice of intent to file claim was in fact filed with reasonable promptness under the circumstances; and (c) acceptance of the delayed notice does not materially prejudice the special compensation fund.

To put the issue in context these facts are needed:

On Sunday, October 25, 1959, Warren L. Beson, head football coach and athletic director at Carleton College in this state, died as a result of a coronary occlusion. A petition for compensation payable under the Workmen's Compensation Act filed almost 2 years later, on October 3, 1961, resulted in a determination that death resulted from a personal injury which arose out of and in the course of his employment.

The relevant medical history preceding the death commences on January 27, 1958, when Mr. Beson suffered an extensive anterior myocardial infarction. He was paid compensation, and on April 22, 1958, the employer filed with the Industrial Commission a notice of the physical impairment, which was accepted by the commission on December 22, 1958.

On Saturday, October 24, 1959, Mr. Beson was acting as head football coach for a home game. During the first half, exciting and controversial incidents occurred in which he participated. During and shortly before the half-time intermission, it was observed that he appeared to be having difficulty breathing; that he required assistance as he left the field; that his color was not normal; that he "sagged" and lacked his usual vigor. During the second half of the game, contrary to his custom, he sat on the sidelines wrapped in a coat.

That evening he went to Minneapolis to attend a reception. After

his return to Northfield, he became uncomfortable and a doctor was called to his home about 12:30 a. m. on Sunday, October 25, 1959. The doctor was engaged in examining Mr. Beson when the patient expired.

It was not until the summer of 1961 that Mr. Beson's surviving widow made serious inquiry as to a possible claim under the Workmen's Compensation Act on account of the death of her husband. About August 15, 1961, she first consulted her attorney, Mr. Glenn McCarty of Minneapolis, Minnesota, seeking advice with respect to this matter. Acting on behalf of Mrs. Beson, he instituted an investigation with respect to the facts at Carleton College and, later, compensation proceedings were commenced.

Relators, answering to the claim petition filed October 3, 1961, asserted their intention to claim reimbursement from the special compensation fund and urged that the custodian of it was a necessary party to the proceedings. Formal notice of intention to claim reimbursement was not filed until November 24, 1961.

The Industrial Commission referee made the following findings and determination now relevant:

"That on April 22, 1958, Carleton College filed with the Industrial Commission of Minnesota notice of physical impairment of Warren L. Beson with attached report of Doctor G. N. Rysgaard from the coronary occlusion pursuant to the Minnesota Laws of 1957. Said registration was accepted by the Industrial Commission on December 22, 1958.

\* \* \* \* \*

"That on October 24, 1959, this employe suffered a personal injury arising out of and in the course of his said employment and resulted in his death on October 25, 1959.

"That the employer herein had statutory notice and knowledge of said injury and death.[1]

\* \* \* \* \*

---

[1]Minn. St. 176.141 provides: "\* \* \* Unless knowledge is obtained or written notice given within 90 days after the occurrence of the injury no compensation shall be allowed." Where the employer has knowledge of the death

"That the death of said employe would not have occurred except for the pre-existing physical impairment.

"That the employer herein on the 6th day of October, 1961 did receive dependent's claim petition for compensation and benefits filed herein October 3, 1961, and duly mailed by employe of the Industrial Commission [to] Carleton College on October 5, 1961.

"That on November 24, 1961, the insurer herein filed with the Industrial Commission of Minnesota Notice of intention to claim reimbursement pursuant to the Minnesota Laws of 1957, Chapter 908, copy of which was mailed to the treasurer of the State of Minnesota and to the Minnesota Attorney General by an employe of the Industrial Commission of Minnesota on November 29, 1961.

"That on the 30th day of March, 1962, order joining the Special Compensation Fund was entered to include the treasurer of the State of Minnesota as custodian of the Special Compensation Fund as a part of the proceeding, and that a copy thereof was served upon the treasurer of the State of Minnesota and upon the Attorney General of the State of Minnesota, which was duly served upon the 2nd day of April, 1961.

\* \* \* \* \*

"It is further ordered that the claim of the insurer for reimbursement from the Special Compensation Fund for the benefits of Minnesota Statute 176.13 be and the same is hereby denied."

Appeal to the Industrial Commission by the employer-insurer was confined "to the denial of the claim of the insurer for reimbursement from the Special Compensation Fund for the benefits of M. S. A. 176.13 and the omission of the referee to make an additional finding to the effect that the insurer herein has complied with said statute to the best of its ability compatible with the notice of this claim." The decision of the referee was affirmed by the Industrial Commission. Com-

---

of the employee, such knowledge is sufficient to satisfy the statutory requirement even though the employer does not know of the existence of causal relationship between employment activity and death. Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646. Cf. Sobczyk v. City of Duluth, 245 Minn. 569, 73 N. W. (2d) 795.

missioner A. E. Ramberg comments in his opinion in support of the affirmance:

"* * * [T]he referee denied reimbursement to the employer-insurer, giving the statute a literal interpretation. We agreed. When the language is so clear and mandatory, no other interpretation is possible, even though its application to the facts here will result in an apparent injustice."

1. In our opinion, the time limit with respect to notice should be treated as directory (a) if the delay in filing notice within the time specified was not due to fault on the part of the employer-insurer; (b) if the employer-insurer gave notice to the special compensation fund promptly after it knew or had reason to know that a claim had been or was about to be filed against it;[2] and (c) if no material prejudice to the special compensation fund will result from the time extension. This conclusion, although not free from doubt,[3] is preferred because (a) it accords with general principles of construction applied in interpreting statutory time limitations; (b) it serves the general object of the law involved; (c) it has precedent by analogy in decisions of this court construing other time limitations found in the Workmen's Compensation Act; and (d) it recognizes that the legislature does not intend a result that is unreasonable.

1a. Rambeck v. La Bree, 156 Minn. 310, 313, 194 N. W. 643, 644, discussing general principles of statutory construction, gives approving reference to the observation that—

---

[2]Note that the knowledge, which may be actual or constructive, specified is that "a claim has been or is about to be filed." Such knowledge could exist (a) if the injury occurred under a circumstance where relationship to death or disability, on the one hand, and employment, on the other, should be evident to the employer-insurer, or (b) if the employer-insurer knew that a claim of such a relationship, well founded or otherwise, has been or is about to be asserted. This is a more comprehensive concept than "knowledge of the occurrence of the injury" as that phrase is used in § 176.141 and interpreted by Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646.

[3]See, for example, Domash v. Standard Coat, Apron & Linen Service, 11 App. Div. (2d) 575, 201 N. Y. S. (2d) 142. Cf. Lambright v. St. Luke's Hospital, 166 N. Y. S. (2d) 75, 144 N. E. (2d) 721.

"* * * when a strict compliance with the provisions of a statute with respect to time does not appear essential to the judicial mind, a proceeding will be held valid, although a command of the statute was disregarded."

The decision declares that when the legislature does not specify the consequences of a disobedience of its direction as to a time limitation, the court should seek to ascertain the legislative intent, not only from the language of the statute but in addition from "the subject matter, the importance of the provision and the object intended to be secured." Except in cases where the limitation of time is essential to the protection of private rights, the rule to be followed generally is this (156 Minn. 314, 194 N. W. 644):

"* * * If the provision does not go to the essence of the thing to be done, or if the act is to be done within a certain time without any negative words to restrict the doing of it afterwards, the provision is usually held to be directory."

1b.  The object intended to be secured by § 176.13 is advanced, we believe, if an employer-insurer who has done everything reasonably possible to qualify for the relief this law affords is allowed reimbursement from the special fund. Minn. St. 176.13 was "undoubtedly intended to encourage the employment of physically handicapped persons by relieving employers of part of their liability for compensation through transferring part of such liability to the special compensation fund." McGuire v. Viking Tool & Die Co. 258 Minn. 336, 347, 104 N. W. (2d) 519, 527.

The fund from which the employer-insurer seeks reimbursement is one to which it has contributed. The death was due in part to a prior physical impairment which was registered with the commission. The employer accepted the risk of continued employment of one more subject to injury because of the previous disabling event. The injustice of denying the employer in this case special-fund recourse for failure to file notice of intention to claim reimbursement, before he knew or had reason to know that a death claim would be asserted, would surely inhibit others who might be moved to employ the physically handicapped in reliance on § 176.13.

1c. Although there is no decision of our court dealing directly with the time limitation included in § 176.13(c), some support for our conclusion is to be found in decisions interpreting § 176.141, which provides with respect to employees' claims for compensation for work-connected injuries:

"* * * Unless knowledge is obtained or written notice given within 90 days after the occurrence of the injury no compensation shall be allowed."

It has been consistently held that an injury has not occurred within the meaning of the quoted sentence until compensable disability appears or becomes manifest. Potter v. Midland Co-ops. Inc. 248 Minn. 380, 80 N. W. (2d) 59; Balow v. Kellogg Co-op. Creamery Assn. 248 Minn. 20, 78 N. W. (2d) 430; Clausen v. Minnesota Steel Co. 186 Minn. 80, 242 N. W. 397; Bruggeman v. Ford Motor Co. 225 Minn. 427, 30 N. W. (2d) 711. It is interesting to compare these decisions with Bergstrom v. O'Brien Sheet Metal Co. 251 Minn. 32, 86 N. W. (2d) 82, construing § 176.151(1), which provides:

"Actions or proceedings by an injured employee to determine or recover compensation, [shall be limited to a period of] two years after the employer has made written report of the injury to the commission, but not to exceed six years from the date of the accident."

In Bergstrom v. O'Brien Sheet Metal Co. *supra,* it is held that this section becomes operative from the date of the accident and not from the date that the employee discovers that he has a disabling injury. The difference in the result can be understood when we consider that the object of § 176.151 is to fix a time when an employer-insurer can be finally relieved from contingent exposure arising out of past employment. The time period is sufficiently great that the employee could reasonably be expected to discover and assert whatever rights he might have under the Workmen's Compensation Act before being barred by the time limitations included in § 176.151, strictly construed. The prejudice to an employer-insurer resulting from the assertion of claims more stale than the limitations of § 176.151(2) contemplate is evident. The time limitations involved in §§ 176.13(c)

and 176.141 are much shorter (52 weeks after the occurrence of the subsequent injury in the one case and 90 days after the occurrence of the injury in the other). To construe the time limitation of § 176.13(c) as directory will not create certain prejudice to the special fund, we believe, any more than is created when we define "occurrence of the injury" within the meaning of the 90-day limitation of § 176.141 as meaning the occurrence of events making compensable disability reasonably apparent.

1d. Finally, we have noted that the canons of statutory construction prescribed by the legislature include § 645.17 providing:

"In ascertaining the intention of the legislature the courts may be guided by the following presumptions:

"(1) The legislature does not intend a result that is absurd, impossible of execution, or unreasonable."

The failure of the statute to specify the consequence of delayed notice gives rise to an ambiguity which makes it necessary for us to ascertain whether the legislature intended the provision to be mandatory or directory. Since, as indicated, we believe that it would be unreasonable to deny reimbursement as against the special fund where the employer-insurer has done everything possible under the circumstances to comply with the statute and there will be no prejudice, in a legal sense, to the special fund if the delayed notice is held to be in compliance, the maxim expressed in § 645.17(1) becomes relevant and supports decision in relators' favor.

The equivocal course of a proposed amendment to the Workmen's Compensation Act in the 1963 session of the legislature which would have changed § 176.13(c) and other parts of the Workmen's Compensation Act had it been enacted is of no assistance in attempting to ascertain legislative intent.

2. The Industrial Commission decision was based on the theory that the time limitation set out in the statute was mandatory and that it was obligated to so consider it, even though the result in this case was unjust. It has not had opportunity to consider the question in light of our determination that the notice of intention to claim reimbursement in this case meets the requirements of § 176.13(c) if (a) delay in

filing the notice within the time specified was not due to fault on the part of the employer-insurer; (b) the employer-insurer gave notice to the special compensation fund with reasonable promptness after it knew, or should have known, that a claim was to be filed against it; and (c) no material prejudice to the special compensation fund will result from the time extension. Therefore, we remand the case to the Industrial Commission for a determination as to whether the notice given was timely, even though more than 52 weeks had elapsed from the occurrence of the injury when it was supplied. In making this determination, the Industrial Commission will have in mind that knowledge of facts which were known to the employer must be imputed to the insurer. Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 87 N. W. (2d) 646.

Officials of Carleton College did have some knowledge of the abnormal reaction of Mr. Beson which occurred on October 24, 1959, and of the fact of his death on Sunday, October 25, 1959. But in an area of medical science as uncertain as that involved in determining causal relationship between heart failure and the stresses of employment,[4] we cannot charge the employer with knowledge that the causal relationship existed or would be claimed on the basis of the facts disclosed in the record before us. Such knowledge must be imputed to the employer-insurer as of the time that Mr. Glenn McCarty, representing Mrs. Beson, made his investigation concerning the matter at the college and indicated the reason for his interest. Whether the lapse of time between (a) that date as it is finally determined to be, and (b) the time the notice of intention to claim reimbursement was in fact filed, was reasonable will be for the Industrial Commission to determine.

Finally, if acceptance of the delayed notice will create demonstrable prejudice to the special fund, the Industrial Commission should refuse to recognize it. By this we mean that if the representatives of the special fund are able to show that significant evidence needed to contest the claim that the death was caused by the preexisting physical

---

[4]For a recent case discussing a related problem, see Hickory v. Hickory Insulation Co. 271 Minn. 74, 134 N. W. (2d) 879.

impairment (a) would have been available had the notice been filed within the 52 weeks specified by § 176.13(c), and (b) is not available because of the delay in filing the notice, the statutory notice requirement should be applied strictly. In a case such as this it seems doubtful that such prejudice could be established. But the matter is for the determination of the Industrial Commission in light of the facts which will be presented to it upon remand.

For the reasons stated the determination of the Industrial Commission is reversed and the case is remanded to it for further proceedings consistent with this opinion.

Reversed and remanded.