STANLEY KOSKI v. ERIE MINING COMPANY.
STATE TREASURER, CUSTODIAN OF
SPECIAL COMPENSATION FUND.

223 N. W. 2d 470.

November 16, 1973—No. 43598.

*Sullivan, Hanft, Hastings, Fride & O'Brien, Tyrone P. Bujold,* and *William M. Burns,* for relator.

*Warren Spannaus,* Attorney General, *Curtis D. Forslund,* Solicitor General, and *Gary C. Reiter,* Special Assistant Attorney General, for respondent state treasurer.

Heard before Knutson, C. J., and Rogosheske, MacLaughlin, and Schultz, JJ.

ROGOSHESKE, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission which modified a determination of the compensation judge by limiting reimbursement to the employer-relator, Erie Mining Company, from the special compensation fund to 50 percent of compensation benefits to be paid to Stanley Koski, employee, who, because of a preexisting work-related physical impairment to his back, now suffers total permanent disability resulting from two subsequent work-related back injuries which aggravated the employee's preexisting condition.

The issue presented is whether, upon the undisputed facts, Minn. St. 1969, § 176.131, subd. 1, our "second and successive injury" statute in force at the time of the employee's final injury, which resulted in total permanent disability, requires full reimbursement to the employer from the special fund of all benefits paid and payable by the employer in excess of 26 weeks and $1,000 in medical expenses. Since the commission apportioned 50 percent of liability for such benefits to the employer and we hold that full reimbursement is required, we reverse.

Stanley Koski, now aged 64, was employed as a laborer by Erie Mining Company, a self-insured employer, from 1940 until December 12, 1969. During this period he incurred four separate and distinct work-related injuries.

In 1958, he sustained his first injury when he jumped from a moving truck. He injured his leg, hip, and the lumbar and pelvic regions of his back. As a result he was disabled for 2 4/5 weeks. Compensation for this injury was paid by Erie.

In 1965, he suffered a second injury when a cable broke and caused him to fall down a steep slope. He was treated for injuries to his left shoulder, neck, and arm, and to his lower back and right hip. As a result he was unable to work for approximately 9 months, and compensation was again paid by Erie.

In April 1968, while carrying some heavy equipment, he sustained a third injury to his upper back, neck, and shoulders and also an aggravating injury to his lower back and right hip. As a result he was temporarily totally disabled for a period of 29 2/5 weeks.

The fourth and final injury occurred on December 8, 1969. While walking through deep snow, the employee fell backward, hitting his head and shoulder against some taconite. He was treated for injuries to his right shoulder, right arm, and back. For a period of 3 days following this injury, he was assigned a temporary job doing janitorial work but could no longer work effectively. He left the employ of Erie in December 1969 and has not worked since that time. It is not disputed that because of successive injuries to his back he has been totally and permanently disabled since December 8, 1969, and that his preexisting physical impairments resulting from the 1958 and 1965 injuries were duly registered with the commission.[1]

---

[1] The commission found that Erie had complied with requirements of registration for the 1958 and 1965 injuries but that it had not filed the requisite notice of intention to claim reimbursement for the 1965 injury pursuant to the provisions of Minn. St. 1965, § 176.131, subd. 6. Therefore, the 1968 and 1969 injuries are treated as a single occurrence

A great deal of testimony elicited during the hearing related to the question of the employee's physical impairments prior to the 1968 and 1969 injuries. Respondent custodian of the special fund sought to establish that each of the four injuries contributed in equal degree to employee's total disability. Over objection, the compensation judge allowed such testimony as evidence necessary to support the custodian's argument that liability for total permanent disability benefits should be apportioned between the employer and the special fund in proportion to the percentage of disability each injury contributed to total disability.

Respondent custodian's expert witness, Dr. Robert Wengler, testified that employee's loss of spinal function, together with his total disability, was due to the combined effects of the 1958, 1965, and 1969 injuries. Another expert, Dr. Dwayne Person, refused to apportion the disability between the injuries but concluded that since 1958 the employee's condition was "[s]lowly but progressively getting worse." In addition, Dr. Person stated that the 1968 and 1969 injuries would have caused only temporary or minor discomfort had it not been for the preexisting physical impairment caused by the two earlier injuries.

The compensation judge found that the employee's disability from the 1958 and 1965 injuries constituted "pre-existing physical impairments" and that by reason thereof his total permanent disability was "substantially greater" than would have resulted alone. In accordance with the provisions of § 176.131, subd. 1, and upon further findings of due registration of the 1958 disability and filing of a notice of intent to claim reimbursement for the 1968 and 1969 injuries, the employer's payment of past and future compensation benefits, less statutory deductibles, was ordered to be fully reimbursed by the special fund.

On appeal, the commission adopted several of the factual find-

---

for the purposes of Minn. St. 1969, § 176.131, while the combined effects of the 1958 and 1965 injuries constitute the preexisting physical disability. Erie does not seek reimbursement for benefits paid as a result of the 1965 injury.

ings of the compensation judge but added a finding that the four injuries were "equally continuing and competent producing causes of the employee's permanent total disability." Based upon this factual determination and its interpretation of § 176.131, subd. 1, the commission apportioned liability between the employer and the special fund, modifying the order so as to limit reimbursement to 50 percent of the benefits paid and payable to the employee.

Assuming evidentiary support for the commission's added finding, we address the question of whether the governing statute requires full reimbursement or a percentage reimbursement based on equitable principles of apportionment.

■ Although this court has in the past been presented with analogous legal questions, the precise issue presented is one of first impression. Minn. St. 1971, § 176.131, subd. 1, reads as follows:

"If an employee incurs personal injury and suffers disability that is substantially greater, because of a pre-existing physical impairment, than what would have resulted from the personal injury alone, the employer shall pay all compensation provided by chapter 176, but he shall be reimbursed from the special compensation fund for all compensation paid in excess of 52 weeks of monetary benefits and $2,000 in medical expenses * * *."[2]

It is undisputed that the historical purpose of this statute as it has developed since 1913 is to encourage the employment of physically impaired persons by relieving employers of part of their liability for an aggravation of an employee's preexisting

---

[2] Athough Minn. St. 1969, § 176.131, in force at the time of the 1969 injury, is the governing statute (see, Boltz v. Armour Agricultural Chemical Co. 269 Minn. 482, 131 N. W. 2d 624 [1964]), the language of the statute which must be interpreted and applied is identical with our current statute quoted. The major difference is that in 1969 the employer's second-injury liability was limited to 26 weeks disability benefits and $1,000 medical expenses. The 1971 Legislature by L. 1971, c. 589, § 1, doubled the compensation period and medical expenses.

disability, due either to a prior industrial injury or otherwise, by establishing a special compensation fund from which the employer, after paying benefits, may be reimbursed. Beson v. Carleton College, 271 Minn. 268, 136 N. W. 2d 82 (1965); Haverland v. Twin City Milk Produers Assn. 273 Minn. 481, 142 N. W. 2d 274 (1966).

■ Although the basis for the commission's determination is not at all clear, the commission presumably adopted the argument of respondent custodian that it is inequitable to charge the special fund with all liability for the employee's total disability where the first injury and, in this case, one of the subsequent injuries contributed to cause 50 percent of such disability. The custodian argues such construction of the statute "would shift the previously assessed liability for disability caused by the earlier injury from the employer to the special compensation fund." Ordering full reimbursement, it is further urged, would imperil the financial stability of the special fund, pervert its purpose, and conflict with our prior decisions which have recognized and applied the equitable principles of apportionment.

It is true that we have approved application of the equitable principle of apportioning liability between successive employers so as to require each to contribute his proportionate share of the total liability for compensation benefits due an employee. Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. 2d 617 (1955); Haverland v. Twin City Milk Producers Assn. *supra*. Where disability has resulted from successive accidents under the same employer, we have also approved apportionment of liability between two insurers, one of whom represented the employer at the time of the first injury and the other when the second injury occurred. Peterson v. Dairy Distributors, Inc. 269 Minn. 10, 129 N. W. 2d 908 (1964); Carpenter v. Arrowhead Steel Products Co. 194 Minn. 79, 259 N. W. 535 (1935); Peniston v. City of Marshall, 192 Minn. 132, 155 N. W. 860 (1934). However, in each of these cases such apportionment of responsibility was adopted in the absence of governing statute. Although § 176.131 and its

predecessor statutes were in force, they were not applicable. The court, therefore, was free to apply equitable principles which advanced the basic fundamental of workmen's compensation laws that the cost of the product or service of each employer shall proportionately "bear the blood of the workman."

The language of Minn. St. 1969, § 176.131, which is applicable here, is clear, unambiguous, and unequivocal. This statute not only makes no reference to apportionment but the language used negates any inference of intent that apportionment be applied. Where a person with an existing physical or mental impairment which hinders his employability is hired or retained and incurs an industrial injury causing "disability that is substantially greater, because of a preexisting physical impairment, than what would have resulted from the personal injury alone," our statute declares that the employer, save for a limited liability, "shall be reimbursed from the special compensation fund." We fail to see how the plain language of the statute is susceptible of any construction that would write into it the principle of equitable apportionment.

More important in our view, an attempt to apportion liability between the employer and the fund would require disregarding the manifest and laudable public policy of the statute and hinder, if not defeat, the attainment of its objectives. Where an employee has a preexisting permanent partial disability resulting from an industrial injury, such as for example the loss of an arm for which his employer has paid all benefits, and subsequently he suffers total permanent disability as the result of the loss of his other arm, apportionment of liability between the employer and the fund would impose on the employer who retained or hired the employee more liability than he would have incurred had the employee not been retained or hired following his prior disability. While apportionment may seem more appropriate in a case involving successive and aggravating back injuries, the result of its application would be the same. As we view the statute, its intention is to treat second and successive industrial injuries

8

aggravating a preexisting disability as separate and distinct injuries even though apportionment from a medical standpoint is possible. It must be borne in mind that there is no reimbursement from the fund for benefits paid by the employer for the first injury or for any nonregistered injury. Thus, the very requirement that the employer must pay part of the compensation benefits for the second injury, in this case 26 weeks of disability benefits and $1,000 medical expense, supports our conclusion that the legislature intended to treat the legal effect of each second or successive or final injury and the resulting disability as an independent compensable injury. It seems inescapable that to apportion liability would conflict with the purpose and objectives of providing a statutory incentive to an employer to hire or retain a physically impaired person without being deterred by incurring potentially greater liability for injuries which aggravate the preexisting infirmity.[3]

Finally, the practical problems in determining a just apportionment promote litigation and other difficulties which the legislature might well have chosen to avoid when dealing with our statute. In this case, the principal treating orthopedic surgeon, Dr. Person, admitted that he has continually avoided attempts to apportion causal contribution of successive injuries, stating that he was "not expert enough to do it." Although Dr. Wengler was more specific in concluding that the employee's disability was the result of the combined effects of the 1958, 1965, and 1969 injuries, he failed to assign a percentage of causation to each individual injury.[4] Such hesitation on the part of expert witnesses attests to the fact that apportionment of disability resulting from

[3] See, Hegdahl v. City of Minneapolis, 268 Minn. 412, 129 N. W. 2d 798 (1964); Peterson v. Halvorson, 200 Minn. 253, 273 N. W. 812 (1937).

[4] Thus, the finding by the commission that the four injuries were "equally continuing and competent producing causes of the employee's permanent total disability" does not accurately reflect the nature of the expert testimony. Indeed, Dr. Wengler did not have sufficient information about the 1968 injury to include it in his calculation.

multiple injuries poses the difficult problem of drawing a line between opinion evidence based on reasonable medical certainty and pure speculation.

However careful the custodian and the commissioner of the department of labor and industry (formerly the Workmen's Compensation Commission) must be in discharging their statutory responsibilities relating to the "financial status" of the special fund,[5] and mindful that other jurisdictions may have decided this issue differently,[6] we hold that the statute should be construed and applied so as to promote its underlying purpose and advance its undisputed objectives.

Reversed and remanded with directions to the commission to reinstate the findings and determinations of the compensation judge.

MR. JUSTICE YETKA and MR. JUSTICE SCOTT, not having been members of this court at the time of the argument and submission, took no part in the consideration or decision of this case.

## ON REHEARING

On November 22, 1974, the following opinion was filed:

Reheard before Sheran, C. J., and Rogosheske, Peterson, MacLaughlin, and Scott, JJ., and considered and decided by the court en banc.

PER CURIAM.

In the original opinion in this case we emphasized that Minn. St. 1969, § 176.131, subd. 1, contains "clear, unambiguous, and unequivocal" language negating an inference that statutory apportionment was intended. We said:

"* * * We fail to see how the plain language of the statute is susceptible of any construction that would write into it the principle of equitable apportionment."

---

[5] See, Minn. St. 176.131, subds. 10 and 11.

[6] Most notably, New York. See, Zacamelski v. Roscoe Mfg. Co. 34 App. Div. 2d 847, 310 N. Y. S. 2d 460 (1970), and cases cited therein.

Having heard reargument of the case, we remain of this view.

We recognize, however, that an additional reason given in support of our opinion, i.e., that apportionment would inhibit the employment or retention of handicapped persons, may not apply in all cases. Our attention has been directed, for example, to this possibility: If, in the event of a second injury, apportionment were to be enforced, the employer at the time of the first injury might be encouraged to retain the employee, giving him work with minimal injury exposure rather than expose the employee to the risk of a second injury from more hazardous employment elsewhere and the employer to liability for apportionment. To the extent that this is a likely situation, it dilutes the policy considerations mentioned as reinforcing considerations in support of our prior decision. To what extent instances of the problem of retention of first-injury handicapped by an employer occur, and the effect allowing apportionment would have on encouraging the practice, is unknown. A study and evaluation of these considerations is properly a legislative function.

We are satisfied, however, that if the legislature intended statutory apportionment, it would have said so explicitly. If we misconstrue the legislative intent, it can make apportionment available readily at its forthcoming session. The fact that apportionment has not been claimed by the fund as against first-injury employers in situations such as this one until recently may not constitute an administrative interpretation of the meaning of the statute, but it does suggest that the fund's inability to secure apportionment will cause no crisis in the interval between now and the time the legislature has opportunity to evaluate the policy considerations involved. In this connection, it is important to bear in mind that apportionment will have no effect on a second employer's decision to hire an industrially disabled person. If apportionment is not allowed, the risk of greater disabling injuries is borne by the special fund. If there is apportionment, that risk is shared between the first employer and the fund. Further, the allowance or disallowance of apportionment in this case

has no effect upon the benefits payable to the employee. He is compensated fully by the second employer. Also, to the extent that this employer secures reimbursement from the special fund, the ultimate burden of payment falls upon employers generally. Whether this allocation of the burden is to be preferred over apportionment in instances such as this also is a matter which can best be assessed by the legislature.

We conclude that the statute as now written does not authorize the special fund to seek apportionment from the first employer. Apart from the statute, apportionment might arguably be allowed on principles of equitable subrogation. The theory would be that the fund, having relieved the second employer from a part of an obligation which would otherwise be imposed upon him, should, in equity, be subrogated to the second employer's right to seek apportionment from the first employer. Resort to this theory in support of apportionment is discouraged by the fact that it would have no application where the second injury was sustained by the employee as a result of an accident arising out of and during the course of the same employment which occasioned his first injury, and this for the reason that the employer in such a case could have no rights of apportionment as against himself. In that case, the employer having no right of apportionment, there would be nothing to which the fund could succeed. This kind of a result is avoided if the legislature deals with the problem directly and determines whether or not apportionment should be allowed.