Bernard **KLOSS**, Respondent,

v.

**E & H EARTHMOVERS and Northwestern National Insurance Company, Relators,**

and

**Jim Christle and Western National Insurance Company, Respondents,**

and

**Minnesota Department of Jobs and Training/UI, and Physicians Health Plan, Intervenors.**

No. C1-91-195.

Supreme Court of Minnesota.

June 21, 1991.

James S. Pikala, Arthur, Chapman & McDonough, P.A., Minneapolis, for Relators.

Jerry J. Lindberg, Ronald Dreski, P.A., Sauk Rapids, for Bernard Kloss.

Raymond W. Fitch, Fitch, Johnson, Larson & Walsh, Minneapolis, for Jim Christle.

Richard H. Rhode, Dept. of Jobs & Training/UI, St. Paul, for intervenor Dept. of Jobs & Training.

YETKA, Justice.

This case raises the question of how the federal social security disability offset against workers' compensation benefits should be apportioned between two separate employers/insurers, both of whom are

making workers' compensation payments to an employee injured twice—once while working for each employer—and, as a result, is permanently and totally disabled. The workers' compensation judge decided that the first employer/insurer is entitled to a deduction of two-thirds of the employee's social security payment because the first employer had been determined to be two-thirds responsible for the total disability. As a result, the first employer/insurer had to make no further workers' compensation payments. The Workers' Compensation Court of Appeals reversed the compensation judge and decided that SSDI benefits should first be deducted from the total workers' compensation benefits due, including supplemental benefits and inflationary increases. The balance was then subject to the apportionment formula the WCCA developed after *Kaisershot v. Archer Daniels Midland Co.*, 23 W.C.D. 706 (Indus. Comm'n 1966). The WCCA further ordered that the benefit be adjusted annually. We affirm the WCCA.

The employee was injured in 1972 while working for E & H Earthmovers, insured by Northwestern National Insurance Company. He sustained a second injury in 1977 while working for Jim Christle, whose insurer was Western National Insurance Company.

E & H and Northwestern contend that the offset for social security benefits should be apportioned in the same way that liability for the employee's disability was apportioned. E & H and Northwestern had been held to be two-thirds responsible for the employee's disability while Jim Christle and Western were one-third responsible. A deduction of two-thirds of the amount of the social security benefit from Northwestern's maximum obligation, which was fixed before Minn.Stat. § 176.645 (1990) permitted annual adjustment of benefits, would result in no benefits being paid by Northwestern. The compensation judge so held. Jim Christle and Western contend that the WCCA ruling, which reversed the compensation judge, is correct.

The parties do not dispute the facts in this matter. The employee sustained two work-related injuries whose combined effect resulted in permanent total disability. The first injury occurred on July 10, 1972, when the employee slipped and twisted his back. The employee was working for E & H Earthmovers at an average weekly wage of $299.20. Northwestern provided workers' compensation liability insurance for E & H. The fixed maximum rate for workers' compensation benefits was $80 per week with no annual adjustment.

The second injury to the employee's back occurred on November 23, 1977. At that time, the employee worked for Jim Christle at an average weekly wage of $396.35. Jim Christle was insured by Western. The maximum compensation rate at that time was $197 per week subject to adjustment of benefits pursuant to Minn.Stat. § 176.-645.

A hearing was held in February 1981 before a compensation judge to determine the employee's entitlement to benefits and the apportionment of liability between the two insurers. The Workers' Compensation Court of Appeals heard the case on appeal. The WCCA ultimately apportioned liability two-thirds to E & H and Northwestern and one-third to Jim Christle and Western. Western was ordered to pay temporary total benefits subject to reimbursement from Northwestern at a maximum rate of $80 per week.

Western, designated as paying agent, paid the benefits with reimbursement from Northwestern until the employee was determined in 1986 to be eligible for social security disability insurance retroactive to December 1983. On April 21, 1986, Western began reducing the employee's weekly benefits by the amount of the weekly SSDI benefits paid to the employee. Western also reduced weekly benefits by 20 percent to recover the overpayment. *See* Minn. Stat. § 176.179 (1990).

Northwestern denied responsibility for payment of any further benefits after April 6, 1987, basing its position on the offset for social security benefits permitted by Minn. Stat. § 176.101, subd. 4 (1990). Northwestern reasoned that its two-thirds responsibility for the employee's disability entitled it

to a two-thirds share of the offset. The resulting offset would exceed Northwestern's weekly obligation. Northwestern sought reimbursement from Western for what it considered to be overpayments from December 1, 1983, through April 6, 1987. Western filed a Petition for Contribution in order to recover $80 per week from Northwestern from April 6, 1987, to the present and continuing into the future.

A second compensation judge ruled that the SSDI offset should be apportioned between the two insurers in the same way that the WCCA had apportioned liability. He found that Northwestern's share of the offset exceeded the $80 maximum rate; therefore, Northwestern was not responsible for any contribution. The WCCA reversed the decision of the compensation judge and ruled that the offset should be apportioned according to the *Kaisershot* formula. *See Kaisershot v. Archer Daniels Midland Co.*, 23 W.C.D. 706 (Indus. Comm'n 1966). Northwestern appealed to this court.

Thus, the sole issue presented is how the offset granted by Minn.Stat. § 176.101, subd. 4 for social security disability benefits should be apportioned between two employers/insurers who pay workers' compensation.

In reviewing decisions of the WCCA, this court views facts in the light most favorable to the findings of the WCCA. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54, 60 (Minn.1984). A decision which is based on the application of a statute to undisputed facts, however, involves a conclusion of law which is not binding on this court. *Bradley v. Vic's Welding*, 405 N.W.2d 243, 245 (Minn.1987). This case involves the application of Minn. Stat. § 176.101, subd. 4 to stipulated facts, and so this court examines the question de novo.

Minnesota Statutes § 176.101, subdivision 4 provides statutory authority for an employer/insurer to get an offset when an employee draws social security benefits simultaneously with workers' compensation benefits. The purpose of the statute is to reduce duplication of the two programs.

There are three prerequisites to be met before an employer/insurer may benefit from the offset: (1) the injured employee must be permanently totally disabled, (2) payment of $25,000 in weekly compensation is made, and (3) the social security disability benefits are occasioned by the same injuries which gave rise to workers' compensation benefits. Minn.Stat. § 176.-101, subd. 4.

In addition to the workers' compensation benefits, the employer/insurer who is the paying agent must pay supplementary benefits pursuant to Minn.Stat. § 176.132 (1990). The Special Compensation Fund reimburses the employer/insurer for the supplementary benefits. *See* Minn.Stat. § 176.132, subd. 3.

The computation of the offset is straightforward when there is only one employer/insurer. The instant case is more complex, however, because two employers/insurers are liable for the employee's injuries and, therefore, responsible for workers' compensation benefits. Arguably, both employers/insurers should get the advantage of the SSDI offset.

In the absence of a governing statute, this court has apportioned liability for successive injuries between successive employers so as to require each to pay a proportionate share of the total liability for workers' compensation benefits payable to the employee. *Haverland v. Twin City Milk Producers Ass'n*, 273 Minn. 481, 142 N.W.2d 274 (1966). The policy basis for the doctrine of apportionment is that "the cost of the product or service of each employer shall proportionately 'bear the blood of the workman.'" *Koski v. Erie Mining Co.*, 300 Minn. 1, 7, 223 N.W.2d 470, 473 (1974).

The determination of apportionment between successive employers/insurers is based on the facts of each case. *Goetz v. Bulk Commodity Carriers*, 303 Minn. 197, 200, 226 N.W.2d 888, 891 (1975). In cases where an employee has sustained two or more injuries which substantially contribute to the employee's disability, and apportionment is appropriate, the so-called

*Kaisershot* formula is applied in order to calculate the contribution of each employer/insurer. *See Kaisershot v. Archer Daniels Midland Co.,* 23 W.C.D. 706 (Indus. Comm'n 1966). In *Kaisershot,* the employee injured his back in 1953 while working for the first employer. He injured his back again in 1961 while working for another employer. The commission determined that each employer was 50 percent liable for the employee's permanent partial disability. At the time of the second injury, the weekly compensation rate was $45, but the commission reduced the first employer's contribution to $32 because that was the maximum rate at the time of the first injury.

▮ Thus, in cases of multiple injuries contributing to the total disability, the employee is entitled to the compensation rate in effect at the time of the last injury. All employers/insurers are assessed for the disability, but because different rates may be in effect at the time of the injuries, the compensation judge apportions liability to equal the maximum rate at the time of the last injury.

The WCCA has consistently applied the *Kaisershot* formula in apportionment cases. *See, e.g., Dube v. Conroy Bros.,* No. 474–78–0676, 1991 WL 68380 (WCCA Feb. 7, 1991) (WESTLAW, MNWC–ADMIN); *Carlson v. Progressive Beauty,* No. 474–64–4537, 1990 WL 270922 (WCCA Dec. 6, 1990) (WESTLAW, MNWC–ADMIN); *Lidtke v. Howard Lidtke Constr.,* No. 468–40–1549, 1990 WL 166059 (WCCA June 26, 1990) (WESTLAW, MNWC–ADMIN); *Pedersen v. Knutson Companies/River Towers,* No. 468–58–8812, 1990 WL 291717 (WCCA Apr. 16, 1990) (WESTLAW, MNWC–ADMIN).

▮ To apply the *Kaisershot* formula, the compensation judge first determines the percentage of the permanent total disability which is attributable to each of the injuries. Then the judge computes the percentage of each employer/insurer's responsibility for payment of the employee's compensation rate.

▮ Minnesota Statutes § 176.645 provides that injuries occurring on or after October 1, 1975, require annual adjustments upward. For earlier injuries, the maximum compensation rate was set by statute. Employers/insurers of injuries occurring before October 1, 1975, thus have the advantage of a ceiling on their liability. The advantage of the *Kaisershot* formula is that it takes into account the relative responsibility for the total disability attributable to each injury, the statutes which affect the payment in the amount of workers' compensation benefits from the time of the initial injury through the time of the injury resulting in total disability, and the cost of living and supplemental benefits provisions applicable thereafter. It then factors all of these considerations into a formula which attributes to each employer its share of the net payment to be made to the employee after the social security offset. The WCCA calculated the result in this case by first using the SSDI benefit payments to reduce the amount of the permanent total benefits payable to the employee. The balance was then apportioned according to the two-thirds/one-third allocation of responsibility and subject to the *Kaisershot* formula. The *Kaisershot* formula would be reapplied annually to the employee's adjusted compensation rate.

While a number of alternative formulas for offset could be applied, nevertheless, the WCCA has, since 1966, over a 25–year period, applied the *Kaisershot* formula in some form and has extended and broadened its use through the present case. While the formula appears complex, it has worked and appears to achieve an equitable result. We thus decline to impose yet another formula on the insurance industry. Since the *Kaisershot* opinion of over 25 years ago, the WCCA has modified its use. If it is to be abandoned, it appears more appropriate that the legislature should do so rather than the courts.

Accordingly, we affirm the Workers' Compensation Court of Appeals and its determination in this matter in its entirety.