## LAVERN HAVERLAND v. TWIN CITY MILK PRODUCERS ASSOCIATION AND ANOTHER. TILLGES LUMBER COMPANY AND ANOTHER, RESPONDENTS.

142 N. W. (2d) 274.

April 7, 1966—No. 39,814.

*Tyrrell, Jardine, Logan & O'Brien, Raymond W. Fitch,* and *Graham Heikes,* for relators.

*John J. McBrien,* for respondent Haverland.

*John M. Prins,* for other respondents.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review a decision of the Industrial Commission which awarded employee, Lavern Haverland, compensation for temporary total and temporary partial disability due to injuries sustained while in the employ of relator Twin City Milk Producers Association; and which denied the latter's claim that 50 percent of such award should be assessed against respondent Tillges Lumber Company, a part-time employer of Haverland. Twin City contends that the commission was in error in refusing to hold Tillges Company liable for some part of the award.

On September 17, 1946, Haverland commenced work for Twin City at its Farmington plant cleaning various types of equipment. On August 3, 1959, he was admitted to Sanford Hospital in Farmington because of complaints of pain in his right hip. X rays then indicated a slight calcium

deposit near the superior lateral acetabulum of the right hip and narrowing of this hip joint.

On December 28, 1960, in the course of his employment by Twin City, and while lifting some heavy sacks, Haverland suddenly felt pain in his right upper arm which was diagnosed as a rupture of the bicep muscle there. He was required to undergo surgery and was unable to work from February 5, 1961, through March 15, 1961. After his return to work, he again suffered pain from this ruptured bicep and again surgery was performed in May 1961, which caused his disablement from May 17, 1961, to June 6, 1961. He was awarded compensation against Twin City for his loss of time on these two occasions and for 17½-percent permanent partial disability of his right arm.

Subsequent to October 1960, from time to time Haverland engaged in after-hours work for Tillges Company but also continued work for Twin City during regular working hours. On October 13, 1961, while working for Twin City, he slipped and sustained a back injury diagnosed as a potential herniated intervertebral disc which thereafter required a brace for his back. For this injury he was hospitalized between October 16 and October 24, 1961, and thereafter was unable to work until November 21, 1961. For this loss of time, compensation for temporary total disability was paid by Twin City.

Haverland then resumed full-time work for Twin City and part-time for Tillges Company. He testified that while so working he felt "fairly good" and could perform all duties of both jobs without difficulty.

On November 21, 1961, while working for Tillges Company a truck backed over him breaking his pelvis and injuring his abdomen, back, left elbow, left eye, and right leg. For this he was hospitalized in Farmington where records indicate that he complained of severe pain in his back, legs, and abdomen; and that he was nervous and restless while hospitalized there. On December 22, 1961, he was discharged from Sanford Hospital, but entered it again in April 1962 for a transplant of the ulnar nerve root of the left elbow because of traumatic neuritis due to this accident. During this confinement, hospital records indicate he appeared "very distressed"; "apprehensive"; "nervous and unable to sleep"; "unable to relax"; "worried about financial problems"; and that

he complained of "hot flashes" and at times was observed crying and being otherwise apprehensive. Dr. Jurgen Moller, who attended him at the time, testified that during this confinement Haverland exhibited excessive depression, nervousness, and anxiety.

As a result of the November 21, 1961, accident, Haverland lost approximately 165 days from his employment by Twin City. There was evidence that after he did resume employment with this company on July 16, 1962, he was not able to perform his work as competently as he had before this accident; that he complained frequently of physical problems; of pain in his left arm; of being tired and unable to do his work; and that his right leg was swollen all during this employment. The insurer of Tillges Company paid all medical expenses incurred by reason of this accident and also paid compensation to Haverland for 23 weeks and 4 days temporary total disability and for 10 weeks temporary partial disability.

On August 18, 1962, while working for Twin City, Haverland slipped from a ladder on the inside of a large drier and fell on an auger some 20 feet below, sustaining a compound fracture of the tibia and fibula of his right leg. He was again taken to Sanford Hospital in Farmington for treatment where he remained for approximately a week. Because of this disability, he was unable to resume employment with Twin City until January 22, 1963. Dr. Moller testified that on December 5, 1962, he examined Haverland in his office and then found that his primary disability was psychological anxiety or nervousness. Upon resumption of his work with Twin City he was assigned as a painter. On the second day of this employment, he became sick and collapsed in the office of the superintendent. He was again taken to Sanford Hospital in Farmington where he was found to have a fever of 104 degrees. His difficulty was then diagnosed as due principally to a severe mental depression. With respect thereto, Dr. Moller testified as follows:

"Q. And the leg fracture in the fall from the ladder occurred on August 18, 1962, Doctor, let me ask you this, isn't it your opinion that the straw that broke the camel's back, if you please, the injury that precipitated the severe mental depression was the one that occurred in

August of 1962, that is the one that precipitated the real need for the psychiatric care and the hospitalization * * *?

"A.   Yes, and the back of the camel was very heavily weighted."

He further testified that the accident of August 18, 1962, was the one most significant in producing the nervous depression which caused Haverland's disability.

After this Haverland was hospitalized at Mounds Park Hospital from January 24 through March 8, 1963, where his difficulty was diagnosed as "conversion hysteria with * * * depression." In May 1963 he was examined at the Mayo Clinic in Rochester where a diagnosis of "Post Traumatic Tension State" was made. After this Twin City refused to again employ him. Between August 29, 1963, and December 23, 1963, he engaged in part-time work for Tillges Company at an average income of about $35 per week, but subsequently gave up this employment because of his inability to perform the work.

The present compensation claim is for permanent total disability from and after January 23, 1963, and continuing up to the hearing and thereafter. Both Twin City and Tillges Company are named in the petition as employers liable for compensation for such disability. Based upon evidence submitted at the hearing, the referee made findings as follows:

"That the   * * *   injuries of December 28, 1960, October 13, 1961, and November [21], 1961, each created physical impairment to the employee.

"That the combined effects of said pre-existing impairments and injury of August 18, 1962, * * * created substantially greater disability than would have resulted from said latter injury alone * * *.

"That on August 18, 1962, the employee suffered a personal injury arising out of and in the course of his employment with his then employer in the nature of fracture of the tibia and fibula of the right leg with later conversion hysteria and superimposed depression.

"That as a result of said injury and said pre-existing physical impairments the employee was *temporarily* * * * *totally disabled* from August 18, 1962, through August 28, 1963, save for   * * *   January 23, 1963, a period of 53 weeks and 2 days.

"That as a further result of said injury and said pre-existing physical

impairments the employee has been *temporarily partially disabled* commencing August 29th [1963] to the date of last hearing herein, December 23, 1963, a period of 16 and ⅗ths weeks, and has been able to earn $35.60 per week, and said disability was continuing on the latter date." (Italics supplied.)

Based upon such findings, the referee awarded Haverland compensation for temporary total disability from August 18, 1962, through August 28, 1963, except for January 23, 1963; and for temporary partial disability from August 29, 1963, to December 23, 1963, and ordered that Twin City and its insurer pay such compensation and all expenses required for Haverland's medical treatment and hospitalization during these periods. In a memorandum attached to such findings, the referee said:

"Decision that the last employer and insurer on the risk on August 18, 1962, are responsible for disability and medical care thereafter appears mandatory under the provisions of Section 176.13.

"The injury of December 28, 1960, * * * [t]he injury of October 13, 1961, * * * [t]he injury of November 21, 1962, * * * must be considered pre-existing physical impairments under the definition of Section 176.13, subdivision d, * * * in that it covers any physical or mental condition which is or is likely to be a hindrance or obstacle to obtaining employment.

* * * * *

"The same result as to liability would have been reached under the aggravation theory well established in the workmen's compensation law. See Gillette versus Harold, Incorporated, 257 Minnesota 313, 101 Northwestern 2d 21; 105."

The referee's decision was subsequently affirmed by the commission. In a memorandum the commission then stated:

"The only expert medical testimony — that of Dr. David D. Norman, a neuro-psychiatrist — attributes the continuing disability to the two major injuries — the truck and drier incidents, but qualified his statement by answering in the affirmative the following question:

" 'Q. And the leg fracture in the fall from the ladder occurred on August 18, 1962, Doctor, let me ask you this, isn't it your opinion that

the straw that broke the camel's back, * * * the injury that precipitated the severe mental depression was the one that occurred in August of 1962, that is the one that precipitated the real need for the psychiatric care and the hospitalization * * *?

" 'A. Yes, and the back of the camel was very heavily weighted.'

"He had worked part-time for two months and full-time for one month after the preceding injuries displaying substantial recovery from the effects of the prior accidents.

"The facts and the medical opinions support the findings and determination of the referee that the fourth injury [sustained when the employee fell from a ladder while employed by Twin City Milk Producers Association] was responsible for the subsequent disablement and treatment. * * *

"It is apparent that the employee has suffered *permanent partial disability* in each of the accidents and is entitled to compensation under M. S. A. 176.101, Subd. 3, and we, therefore, are authorizing him to have this determined. Such compensation may now be due as a result of the 1961 injuries. Compensation for the permanent partial disability caused by the 1962 injury will not be due, of course, until cessation of the period of temporary disability." (Italics supplied.)

■ There is nothing in the language of Minn. St. 1961, § 176.13(a),[1] which would bar an employee, suffering disability resulting in part from

---

[1] Minn. St. 1961, § 176.13(a), provided: "If an employee who has a physical impairment from any cause or origin incurs a subsequent disability by injury arising out of and in the course of his employment resulting in compensation liability for permanent or temporary partial or total disability that is substantially greater by reason of the combined effects of the pre-existing impairment and subsequent injury than that which would have resulted from the subsequent injury alone in the absence of the pre-existing impairment, the employer or his insurance carrier shall in the first instance pay all compensation provided by this chapter, but such employer or his insurance carrier shall be reimbursed from the special compensation fund for all compensation subsequent to those payable for the first 104 weeks of disability, except that if the subsequent injury alone results in permanent partial disability the employer or his insurer shall not be reimbursed for that part of the compensation payable therefor as may be in excess of the first 104 weeks as provided by section 176.101, subdivision 3 (sections 1-42)."

an industrial accident sustained under one employer and in part from a subsequent industrial accident sustained under a second employer, from seeking compensation from both such employers in proportion to their respective responsibility for his disability. It also seems clear that there is nothing in this section which would bar the last employer held solely liable for compensation under the provisions of § 176.13 from seeking contribution from a former employer for his proportionate share of the total liability for compensation due to the employee. While to date we have not passed on this question directly, we have applied the theory of proportionate responsibility in a number of our decisions with respect to successive insurers of the same employer. Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. (2d) 617; Peniston v. City of Marshall, 192 Minn. 132, 255 N. W. 860; Carpenter v. Arrowhead Steel Products Co. 194 Minn. 79, 259 N. W. 535; Peterson v. Dairy Distributors, Inc. 269 Minn. 10, 129 N. W. (2d) 908. Thus, in the Marsolek case we stated (244 Minn. 59, 69 N. W. [2d] 619):

"* * * where an employee's compensable disability is in part the result of an industrial accident sustained under a new employer and in part the result of a prior industrial accident sustained under a former employer still liable therefor under compensation statutes, a number of courts have apportioned full compensation for such disability between the two employers (Employer's Cas. Co. v. United States F. & G. Co. 214 Ark. 40, 214 S. W. [2d] 774; Mund v. Farmers' Co-op. Inc. 139 Conn. 338, 94 A. [2d] 19; Meszaros v. Goldman, 307 N. Y. 296, 121 N. E. [2d] 232; Matter of Anderson v. Babcock & Wilcox Co. 256 N. Y. 146, 149, 175 N. E. 654, 655; see, 2 Larson, Workmen's Compensation Law, § 95.31; Riesenfeld and Maxwell, Modern Social Legislation, p. 313), although the Massachusetts and Michigan courts appear to have held to the contrary. Fitzpatricks' Case (Mass.) 118 N. E. (2d) 774; Lambert's Case, 325 Mass. 516, 91 N. E. (2d) 228; Brinkert v. Kalamazoo Vegetable Parchment Co. 297 Mich. 611, 298 N. W. 301. While we have not had occasion to pass directly on this question, we have approved apportionment of liability for disability resulting from successive accidents under the same employer between two insurers, one of whom represented the employer at the time of the first accident and the other of whom repre-

sented him when the second occurred. Carpenter v. Arrowhead Steel Products Co. 194 Minn. 79, 259 N. W. 535; Peniston v. City of Marshall, 192 Minn. 132, 255 N. W. 860."

It appears reasonable that, if liability for compensation arising from two or more industrial accidents under the same employer may be apportioned between his successive insurers, it should likewise be apportionable between successive employers where industrial accidents are sustained under each of them, both of which contribute to the disability of the employee. Such apportionment, of course, should be in the ratio that each accident bears to the total disability involved, but without limiting the primary responsibility of the last employer as provided for in § 176.13.

■ We have made it clear that, in so far as § 176.13 relates to the special compensation fund, its function in part is to limit the liability of an employer undertaking to employ a person suffering disability due either to a prior industrial accident or otherwise; and to thus encourage employment of persons suffering disability. McGuire v. Viking Tool & Die Co. 258 Minn. 336, 347, 104 N. W. (2d) 519, 527. Under this section an employer of a person with a previous physical impairment from any cause is liable for all compensation for permanent or temporary partial or total disability due to an accident sustained in his employ even though the disability is substantially greater by reason of the preexisting impairment. However, such an employer is entitled, if properly registered under § 176.13(c), to have reimbursement from the special compensation fund for all compensation payments subsequent to those payable for the first 104 weeks of disability. This latter right, however, is subject to the exception that if the subsequent injury alone results in permanent partial disability, the employer then shall not be reimbursed for that part of the compensation payable which may be in excess of the first 104 weeks as provided in § 176.101, subd. 3.

But, as stated above, we think of no reason why the last employer held primarily liable for the compensation under such circumstances should not have the right to seek proportionate contribution from a former employer under whom the employee sustained an industrial accident which created his physical impairment and which contributed

to his final disability. Of course, where, because of dissolution, insolvency, or payment of total compensation liability, the employee's rights against the former employer are nonexistent, then the second employer of necessity would remain solely liable for his compensation under § 176.13. As stated in Marsolek v. Miller Waste Mills, 244 Minn. 55, 60, 69 N. W. (2d) 617, 620:

"* * * Under the general principles expressed in paragraph 1 above, such liability was not affected in any measure by the fact that the disability resulted from the aggravation of an existing infirmity, even though the latter was due to a former industrial accident, since all liability of the former employer therefor had terminated. Under such circumstances, relator could not be regarded any differently than an employee with an infirmity due to other than industrial causes, upon which an industrial accident has imposed further disability. Such an employee is entitled to full compensation for his disability from the employer in whose employment the new accident was sustained even though the disability was the result of the aggravation of the prior infirmity; and in the instant case relator's right to compensation is governed by the same principle."

■ With the elimination of § 176.13 as a factor governing liability as between the two employers here, our function will be to determine if the evidence is sufficient to support the commission's conclusion that the employee's final accident sustained August 18, 1962, while in the employ of Twin City was the sole cause of his permanent and total disability which the commission attributed to his "conversion hysteria with * * * depression." The referee in findings approved by the commission found that the combined effects of the preexisting injuries "created substantially greater disability than would have resulted from said latter [August 18, 1962] injury alone. * * *" This leaves us with much uncertainty as to whether this finding is not in conflict with the commission's conclusion that Twin City was *solely* liable for the employee's present permanent total disability. Twin City argues that such conclusion is sustained by Dr. Moller's testimony. While Dr. Moller did testify that the final accident of August 18, 1962, precipitated the employee's severe mental depression and need for psychiatric care and hospitalization in that this was "the straw that broke the camel's back," he pointed out further that

at the time "the back of the camel was very heavily weighted," presumably from the prior accidents. Because of uncertainty as to the meaning of this testimony, and because of the finding that the preexisting injuries created substantially greater disability than would have resulted from the August 18, 1962, injury, we think it advisable that the case be remanded for further proceedings wherein the commission may determine whether the injuries sustained by the employee in the industrial accidents which occurred prior to August 18, 1962, bear any causal relationship to his present permanent total disability. If it should determine that any of the previous accidents are contributing factors to such disability, it should then determine the proportion which the injuries sustained in the accident of November 21, 1961, bears thereto and apportion compensation between the two employers accordingly.

There being no question as to employee's present right to compensation, this opinion should not serve to suspend any compensation payments presently required, nor as a basis for taxing any costs against him. Should it be determined that the November 21, 1961, accident is causally related to his present permanent disability in any proportion, then Twin City would be entitled to contribution from Tillges Company for any payments made by it beyond its proportionate share of such liability.

Reversed and remanded for further proceedings in accordance with this opinion. $250 attorney's fees and costs are allowed respondent Lavern Haverland. Costs and disbursements are allowed relators against the other respondents.