## MELVIN HOYT v. TWIN CITY BUILDING & IMPROVEMENT COMPANY AND OTHERS.

142 N. W. (2d) 626.

April 29, 1966—No. 39,789.

72

*Robb, Robb & Van Eps* and *Raymond W. Fitch,* for relators.
*Brandt & Soukup* and *Garland C. Brandt,* for respondent insurer.

ROGOSHESKE, JUSTICE.

Writ of certiorari to review a decision of the Industrial Commission apportioning jointly between two compensation carriers the payment of benefits awarded to an employee of a single employer who sustained successive work-connected injuries to his back resulting in permanent partial disability.

The employee was employed by Twin City Building & Improvement Company from 1951 to January 1, 1962. He worked as a construction laborer until late in 1957 when he was made a foreman and, thereafter in January 1961, an estimator. During the period of his employment he suffered five separate injuries to his lower back. It is conceded that the first two injuries in 1952 and 1956, occasioned by lifting heavy objects, are not causally related to his disability. The third injury occurred on January 23, 1957. While carrying an 80-pound incinerator, he experienced a sudden, sharp pain confined to his lower back. He received chiropractic treatments, but thereafter he was never free of pain which intermittently caused him to lose time from work and to continue such treatments. In addition, he performed prescribed exercises, and to relieve pain while driving on and off the job, he devised a specially constructed plywood seat which he always used. When he was made foreman late in 1957, he did less lifting.

On January 28, 1959, while operating a jackhammer, he injured his back for the fourth time. Sudden, intense pain forced him to lie on the floor for about 2 hours before leaving work and visiting a chiropractor

that same day. Although he missed only 2 days' work, he was required to wear a back brace and continue chiropractic treatments.

The fifth and last injury occurred on March 24, 1960. While unloading siding, he experienced severe pain in his lower back and the next day, for the first time, pain in his left leg. In large part because of his back condition, he was given the job of estimator. On January 1, 1962, the employer, because of business conditions, no longer needed an estimator, and since the employee could not do laboring work, he was laid off. His attempts to find light work were unsuccessful.

Relator Bituminous Casualty Corporation was the employer's compensation insurer through the 1957 injury. Thereafter and during the time of the 1959 and 1960 injuries, Mutual Service Casualty Company was the insurer.

In March or April 1962, the employee suffered a recurrence of severe pain in his back when he stood up after playing cards in his home. The following day he was ordered by a chiropractor to seek medical care for a suspected herniated disc. Subsequently on May 3, 1962, he was hospitalized. A myelogram showed a displaced disc at the L5-S1 level. Surgery was performed on May 8 and a large fragment of a herniated disc (evidencing prior degeneration), which was displaced and floating free in the extra-dural sac, was removed at the L5-S1 level of the lower back.

The referee found temporary total disability and 15-percent permanent partial disability of employee's back as a result of the last two injuries and ordered benefits paid by Mutual Service. On appeal by Mutual Service, the Industrial Commission found an additional 5-percent permanent partial disability of the left leg and also determined (one commissioner dissenting) that the disability resulted from the 1957, 1959, and 1960 injuries, holding both compensation carriers jointly liable for the payment of benefits awarded. The commission's order further provided that Mutual Service make all payments due and that Bituminous make reimbursement in accordance with its joint liability. With respect to the weekly benefits of $45 fixed by law as the employee's rate at the time of his last work-related injury, the commission reduced the contributions of Bituminous to less than one-half of $45 "inasmuch as their accident (1-23-57) occurred at a time when the maximum legal rate was $40.00." The

commission acknowledged the division of the weekly payments into $23.85 payable by Mutual Service and $21.15 by Bituminous to be "arbitrary" but nevertheless justified because it approximates mathematical equality. Each thereby pays approximately 53 percent of the prevailing rate of compensation at the time of the injuries and the carrier's insurance coverage.[1]

Bituminous does not challenge the commission's findings concerning the extent of disability, the amount of the benefits awarded, or that the last three injuries materially contributed to the employee's disability. Neither does it challenge the authority of the commission to apportion liability for the payment of benefits awarded among successive compensation carriers.[2] As we understand it, Bituminous claims only that the order is contrary to law because the order apportioning weekly benefits cannot be upheld in the absence of a finding that the 1957 injury contributed to cause at least one-half of the employee's disability. Although it is conceded that the evidence would support such a finding and that the order with respect to apportioning payments would then be justified, Bituminous argues that the commission in fact found that Mutual Service was responsible for two of the causal injuries and Bituminous for only one and therefore the legal conclusion required was to apportion payments equitably on a ⅓-⅔ basis.[3] While we agree that the commission's findings are incomplete and susceptible of relator's interpretation, we cannot agree that the commission intended to or did so find since the determination of joint liability and the order with respect to payments are wholly inconsistent with such a finding. Clearly, the insufficiency of the findings and the ambiguity of the decision would have justified an

---

[1] $52.9\% \times \$40 = \$21.16$
$53.0\% \times \$45 = \$23.85$

[2] See, Haverland v. Twin City Milk Producers Assn. 273 Minn. 481, 142 N. W. (2d) 274; Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. (2d) 617.

[3] The insurers appear to agree that the employee's rights to compensation are fixed on the date of the accident (Kress v. Minneapolis Moline Co. 258 Minn. 1, 102 N. W. [2d] 497), and therefore the extent of each carrier's liability for payment of benefits allowed by statute is also determined at the time of the accident.

application to the commission for clarification and perhaps also a remand. We would not hesitate to remand were we not persuaded upon a consideration of the entire record, including the referee's findings and the decision and opinions of the commissioners, that the commission in fact determined that the 1957 injury plus the combined effects of the 1959 and 1960 injuries equally caused the employee's disability. We reach this conclusion because the record reveals no discernible effort to establish the proportionate contribution of each of the three separate injuries upon the employee's admitted disability. In our opinion, all of the medical testimony, including that submitted by the insurers, amply supports a conclusion that the circumstances surrounding the 1957 injury and its effect upon the employee were of major significance. This accident rendered the employee highly vulnerable to a herniation of the disc. As the operating surgeon agreed, the last injury was in the nature of the proverbial straw that broke the camel's back.

As we interpret the commission's decision, we are left with the distinct impression that the commission intended to apportion liability equally between both carriers while giving effect to the maximum liability of each under different applicable compensation statutes, which, as each carrier appears to agree, required a computation of the actual dollar amounts payable. Even though the commission, apparently through oversight, failed to specify the maximum number of weeks of Bituminous' liability under the statutes applicable at the time it covered the risk, we deem it unnecessary to remand. No real purpose would appear to be served in doing so, especially where no motion for amended findings was made to the commission. If our interpretation is contrary to the factual determination intended, we know of no reason why the commission could not, on its own motion or at the instance of Bituminous, reopen the matter for further hearing.

Affirmed.