## HAROLD STEEVES v.
## HAMMOND TRANSFER COMPANY AND OTHERS.

*151 N. W. (2d) 273.*

**May 12, 1967—No. 40,135.**

*Brandt & Soukup* and *Garland C. Brandt,* for relators.
*McLeod & Gilmore,* for respondent insurer.

MURPHY, JUSTICE.

Certiorari to review a decision of the Industrial Commission apportioning compensation benefits awarded to an employee of an employer insured by different carriers on the dates of successive accidents.

It appears from the record that Harold Steeves, 38 years of age, was employed by the Hammond Transfer Company as a truckdriver on May 13, 1959, when he sustained an accident in the course of his duties. The accident resulted from a fall in which he struck a mound of frozen dirt, bruising or injuring the small of his back. He was hospitalized for 5 days and disabled from work for a period of less than 4 weeks. After he returned to work, he continued to experience pain and discomfort. Part of the time he wore a back brace and relieved his complaints by a heating pad and other home remedies. As time went on, he felt that his condition was improving. However, on April 10, 1961, he sustained another accident while unloading crates of slate from a truck. The injury occurred while he was attempting to prevent a 580-pound crate from falling. After this accident he was hospitalized for a period of 2 weeks, and when his condition did not improve, he returned to the hospital for surgery. In this surgical procedure on his back, a disc was explored and fragments of bone were removed. He was put in a plastic cast or brace which was kept on for a period of about 4 months. Thereafter, he walked on crutches for a couple of weeks and then with a cane. He suffered considerable pain. When his condition did not improve as expected, he was rehospitalized for further surgery. He wore a plastic cast again for about 3 months and has worn a type of back brace or canvas support with steel braces ever since when he has pain. He continues to have pain and does not sleep well. He has been unable to return to work since April 1961.

At the time of the accident in 1959, the Iowa National Mutual Insurance Company was the compensation insurer for claimant's em-

ployer. They paid compensation for his disability in 1959 and also the hospital and medical bills. In 1961, at the time of the second injury, the Shelby Mutual Insurance Company carried the compensation liability for the employer. This case arises out of a dispute between the two companies as to the liability for compensation benefits following April 10, 1961. Both the referee and the Industrial Commission held Shelby Mutual exclusively liable for temporary total disability and hospital and medical expenses following April 10, 1961, and awarded a 15-percent permanent partial disability against Iowa National. The employer and Shelby Mutual petitioned this court for a review of that decision.

Relators complain that the Industrial Commission erred in affirming the referee's findings assessing full and complete responsibility for all compensation benefits for total disability following the employee's injury of April 10, 1961, and for all of the medical care and attention following that date. They assert that the commission erred in refusing to apportion compensation benefits for total disability between insurers for the proportionate share of such compensation benefits attributable to each of the two industrial injuries, although the commission found a 15-percent permanent partial disability of the employee's back as a result of the first injury and a 20-percent disability of his back as a result of the second injury. They rely on Haverland v. Twin City Milk Producers Assn. 273 Minn. 481, 142 N. W. (2d) 274, and Marsolek v. Miller Waste Mills, 244 Minn. 55, 69 N. W. (2d) 617.

It appears from the record that the employee was attended for both injuries by Dr. Kenath H. Sponsel, an orthopedic surgeon. He diagnosed the injury of May 13, 1959, as a low back strain and contusion. He last attended the employee on June 3, 1959, and did not see him again until April 17, 1961, after the second injury. At that time he found a flattening of the back and spasm and his condition deteriorated. Dr. Sponsel conducted the surgical procedures which have been referred to. He felt that the employee had sustained a 35-percent permanent partial disability of the back and that the original injury of 1959 made the employee's back more "conducive" to further injury. He was of the view that the preexisting injury contributed to the

necessity for surgery, but the injury of April 1961 was a precipitating factor. He also testified, "Well, actually I think the episode in 1961 was a fairly severe injury and on its own could have created a problem necessitating surgery." He testified that medical opinion in this area was necessarily speculative and that it could not be said that the earlier accident did not contribute to the necessity for surgery because he did not need surgery between 1959 and 1961. At another point he testified, "I don't know if he needed surgery, I think he would have more back trouble."

Dr. Richard E. Reiley, an orthopedic surgeon who testified for Iowa National and who examined the employee just prior to the hearing, was of the view that he had sustained a 35-percent loss of use of the back as a whole. He attributed 10 percent of the permanent partial disability to the original injury of 1959 and 25 percent to the second accident. Dr. Harold W. Hanson, who testified for relators, expressed the opinion that the condition sustained by the employee was due equally to the injury of May 1959 and the later injury of April 1961. He felt that the employee had a 25-percent permanent partial disability of the back.

The findings of the referee, which were adopted by the commission, point out that on May 13, 1959, the employer was insured by respondent Iowa National and that company paid all the compensation resulting from the injury of May 13, 1959. It was also found that on the date of the second accident, April 10, 1961, the employer was insured by Shelby Mutual. The referee further found:

## "XVI.

"That as a result of his personal injury of May 13, 1959, said employe has sustained a 15 per cent permanent partial disability of his back.

## "XVII.

"That as a result of his personal injury of April 10, 1961, said employe has suffered an additional 20 per cent permanent partial disability to his back, provided, however, that as a result of employe's personal injury of April 10, 1961 the employe is not able to perform

the duties required in his employment with the above named employer and is totally disabled therefrom."

The findings further recite that—

"* * * in addition to compensation in the sum of $162.00 for 3.6 weeks of temporary total disability and medical expense in the sum of $266.30, heretofore paid, the employe herein * * * is hereby awarded [against Iowa National] * * * compensation in the sum of $2,362.50, representing payment of 52.5 weeks of specific compensation for 15 per cent permanent partial disability of the back at the weekly compensation rate of $45.00 * * *."

As to Shelby Mutual, compensation was awarded—

"* * * in the sum of $6,795.00 for 151 weeks of temporary total disability from April 15, 1961 through March 6, 1964, * * * and the further payment of compensation for disability from and after March 6, 1964 as his disability may warrant, together with costs and disbursements * * *."

The order goes on to recite that in addition to medical and hospital expense in the sum of $4,528.05 already paid, Shelby Mutual shall pay certain other doctor bills, drugs, and for prosthetic devices. It also ordered Shelby Mutual to further compensate the employee at the established rate—

"* * * during the continuance of his period of temporary total disability or at such other weekly rate as his partial disability may warrant as a result of his personal injury of April 10, 1961 to and including a total of 350 weeks; and that should said employe be totally disabled beyond said 350 weeks * * *, said employe may petition for further compensation benefits, all in accordance with the provisions of the Minnesota workmen's compensation law."

Shelby Mutual is further ordered to pay for "such further medical care and attention as may reasonably be required," as provided by law. The order also requires that the employee shall cooperate in taking the vocational training course to fit himself for other employment.

It is the contention of the relators that the commission should have

made a determination of the proportion of liability attributable to each company for continuing total disability. They argue that the commission ignored the fact that the employee's total disability represents the residual effect of two injuries although they substantially reached that determination by finding that the injuries resulted in almost equal percentages of permanent partial disability of the back. They argue that, contrary to the percentages of disability expressed in findings XVI and XVII, the commission assessed responsibility for continuing total disability upon Shelby Mutual without apportioning the liability on the basis of the percentages found. They rely on Haverland v. Twin City Milk Producers Assn. *supra,* where it was observed that apportionment should be in the ratio that each accident bears to the total disability involved.

It appears to us that the findings of the referee and commission are unclear and indefinite as they bear upon the issues presented. It is not clear whether the commission approached the problem as one of apportionment of liability between the two companies or whether it disposed of the matter on the basis of two separate and unrelated accidents. It is the function of this court to determine whether the evidence is such that the commission might reasonably have come to the conclusion that it did, and if so, the findings will not be disturbed unless they are manifestly contrary to the evidence or unless consideration of the evidence and the inferences permissible therefrom would clearly require reasonable minds to adopt a contrary conclusion. 21 Dunnell, Dig. (3 ed.) § 10426(12). Under the circumstances we are not at liberty to disturb the findings of the referee and commission since we are uncertain of their import. We accordingly remand the case to the Industrial Commission for further proceedings or further findings pursuant to Minn. St. 176.481, which provides:

"* * * Where necessary the supreme court may remand the cause to the commission for a new hearing or for further proceedings with such directions as the court deems proper."

Since we are unable to relate the findings and order of the commission and referee to the statutory provisions governing compensation

benefits, the case is remanded for further clarification or further proceedings as the commission may deem proper. Chillstrom v. Trojan Seed Co. 242 Minn. 471, 65 N. W. (2d) 888.

Remanded.