## WILLIAM NELS JENSEN v. KRONICK'S FLOOR COVERING SERVICE AND OTHERS. HAGEN'S INC. FLOOR COVERING AND ANOTHER, RELATORS.

245 N. W. 2d 230.

August 6, 1976—No. 46432.

*Joseph J. Grill,* for relators.

*Richard D. Allen* and *Mark N. Stageberg,* for respondents Kronick's and Home Insurance Company.

PER CURIAM.

Certiorari to review a decision of the Workers' Compensation Board awarding the employee certain benefits for medical expenses and disability and refusing to apportion the award between successive employers and their respective insurers.

The employee has been temporarily disabled since March 8, 1974, as a result of degenerative changes to his hands and wrists associated with carpal tunnel syndrome. This disability was causally related to repetitive minute trauma occurring in the course of his employment as a carpetlayer over a period of years, but primarily to his work since January 1970. Employee worked for Hagen's Inc. Floor Covering, relator herein, from May 1973 to March 1974. He worked for respondent Kronick's Floor Covering Service for approximately 3 years ending in March 1973.

The Workers' Compensation Board found that the carpal tunnel syndrome constituted a disablement caused by occupational disease within the meaning of Minn. St. 176.011, subd. 15. It further found that Hagen's, Inc., had statutory knowledge of the carpal tunnel syndrome within the 2-year limitation for disability caused by occupational diseases. § 176.151, subd. 7. Based on its findings, the board awarded the employee compensation from Hagen's, Inc. and denied Hagen's, Inc.'s claim against Kronick's for apportionment.

On appeal, Hagen's, Inc., contends that the Workers' Compensation Board erred in classifying the employee's disability as an occupational disease rather than a personal injury and in refusing to allow apportionment of the award.

1. Occupational disease is a statutory term defined by Minn. St. 176.011, subd. 15, as follows:

" 'Occupational disease' means a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment and shall include undulant fever. Ordinary diseases of life to which the general public is equally exposed outside of employment are not compensable, ex-

cept where such diseases follow as an incident of an occupational disease, or where the exposure peculiar to the occupation makes such disease an occupational disease hazard. A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment. An employer is not liable for compensation for any occupational disease which cannot be traced to the employment as a direct and proximate cause and is not recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the workman would have been equally exposed outside of the employment."

The statutory definition does not set out criteria from which one can exclusively classify the impairment resulting from repetitive minute trauma as either personal injury or occupational disease.[1] Although the compensation board has heretofore treated this type of impairment as a personal injury,[2] there is no sound basis in law or logic for reversing its classification pursuant to the expert medical testimony and factual findings of this case.

2. In 1973 the legislature repealed much of the section of the compensation act which dealt with occupational disease, Minn. St. 1971, § 176.66.[3] Included in that portion of the section that was repealed was subd. 5, which had provided for apportionment of compensation among the employers who had employed the employee since the contraction of the occupational disease. After

---

[1] The overlap of the two categories of impairment where disability results from repetitive minute trauma has been recognized in other jurisdictions. See, generally, 2 Larson, Workmen's Compensation, § 39.60.

[2] See, Barcel v. Barrel Finish, 304 Minn. 536, 232 N. W. 2d 13 (1975); Gillette v. Harold, Inc. 257 Minn. 313, 101 N. W. 2d 200 (1960).

[3] L. 1973, c. 643, § 12.

these changes, all that remained of Minn. St. 1971, § 176.66, was the amended subd. 1, which provides as follows:[4]

"The disablement of an employee resulting from an occupational disease shall be regarded as a personal injury within the meaning of the workmen's compensation law."

Thus, there is no longer any statutory authority for apportioning compensation for occupational disease among multiple employers.

Hagen's, Inc., argues that the principles of equitable apportionment which we have applied to successive injury disabilities[5] should be applied herein. While we do not rule out the applicability of equitable apportionment in all instances of disability from repetitive minute trauma, we concur in the compensation board's decision that the award should not be apportioned under the facts of this case.

Affirmed.

---

[4] L. 1973, c. 643, § 11.

[5] Haverland v. Twin City Milk Producers Assn. 273 Minn. 481, 142 N. W. 2d 274 (1966); Peterson v. Dairy Distributors, Inc. 269 Minn. 10, 129 N. W. 2d 908 (1964).