George ROBIN, Respondent,

v.

ROYAL IMPROVEMENT COMPANY,
et al., Employers,

Northwest Home Improvement Company
and Employers Mutual Liability Insur-
ance Company of Wisconsin, Respon-
dents,

George W. Smith Construction Company
and Casualty Underwriters Insurance
Company, Respondents,

Travelers Insurance Company, et
al., Insurers,

Johnson's Building Mart and Allied Mu-
tual Insurance Company, Relators,

State Treasurer, Custodian of the Special
Compensation Fund, Respondent.

No. 49119.

Supreme Court of Minnesota.

Aug. 17, 1979.

Sahr, Kunert & Tambornino, John L. Tambornino and Michael E. Sullivan, Minneapolis, for relators.

Theodore M. Stone, Minneapolis, for Robin.

Ochs, Larsen, Klimek & Olson and Thomas M. Newcomb, Minneapolis, for Northwest Home Improvement Co., et al.

Hansen, Dordell & Bradt and Gene P. Bradt, St. Paul, for George W. Smith Const. Co., et al.

Warren Spannaus, Atty. Gen., Richard B. Allyn, Sol. Gen., Thomas G. Lockhart, Sp. Asst. Atty. Gen., St. Paul, for State Treasurer.

Heard before OTIS, PETERSON, and KELLY, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Johnson's Building Mart and its insurer, Allied Mutual Insurance Company,[1] seek review of a decision of the Workers' Compensation Court of Appeals awarding against relators alone benefits to respondent, George Robin, for temporary total and permanent partial disability from the occupational disease of asbestosis. The principal issue is whether the award should be equitably apportioned between Johnson's and prior employers inasmuch as the asbestos exposure with Johnson's was only a small part of the total. The court held it could not apportion on the facts herein and we affirm on the same ground.

The salient facts are the respondent worked for a variety of overlapping employers as a siding applicator in the construction business from 1947 to October 4, 1975. He was exposed to asbestos in varying degrees, but most extensively prior to 1960 when he worked with Johnson's for the first time. A routine chest x-ray in 1970 alerted him to possible lung disease. Slight physical symptoms and plural fibrosis of unknown etiology appeared by 1972, and asbestosis was finally diagnosed in July 1973. Progression of the disease eventually forced him to leave work permanently on October 4, 1975, when employed at Johnson's. He subsequently filed a claim for disability benefits as of November 15, 1975, against eight employers, their respective insurers, and the custodian of the Special Compensation Fund.

Expert witnesses disagreed as to the date the disease became irreversible and the relative significance of the substantially reduced exposure during the intermittent periods of employment with Johnson's.

The compensation judge determined the disability was sustained on the last day of employment, after the 1973 repeal of the statutory right of apportionment of compensation for an occupational disease.[2] He

1. The employer changed its name to Panelcraft and the insurer to AID Insurance Company, but both are designated by their former names throughout the proceedings.

2. Minn.St.1971 § 176.66, subd. 5, had provided: "The total compensation due for occupational disease is recoverable from the employer who last employed the employee in the employment to the nature of which the disease was due and in which it was contracted. If such disease was contracted while such employee was in the employment of a prior employer, the employer who is made liable for the total compensation, as provided by this subdivision may appeal to the commission for an apportionment of such

did not permit equitable apportionment since respondent was asymptomatic until the time he worked for Johnson's alone, and there was no rational basis for allocating liability. The court of appeals affirmed,[3] recognizing that the general concept of personal injury now applies to occupational diseases and that neither the former statute nor the case law would permit apportionment in this case.

The issue calls for affirmance as, even on the uncertain authority of *Jensen v. Kronick's Floor Covering Service*, 309 Minn. 541, 245 N.W.2d 230 (1976), and *Michels v. American Hoist & Derrick*, 269 N.W.2d 57 (Minn.1978),[4] no clear divisibility is possible where numerous employers overlapped and the degree of exposure varied considerably. We agree also that the former statute which required proof that the disease was contracted during prior employment would not have allowed apportionment on these facts.

We have chosen to write an opinion primarily for the purpose of addressing a significant problem in the occupational disease area of workers' compensation. As we said in *Wallace v. Hanson Silo Co.*, 305 Minn. 395, 396, 235 N.W.2d 363, 364 (1975):

> compensation among the several employers who, since the contraction of such disease, employed such employee in the employment the nature of which such disease was due. Such apportionment is to be proportioned to the time such employee was employed in the service of such employers provided, that if a prior employer has met the requirement as to minimum standards herein provided for and has been certified by the workmen's compensation commission to that effect, that then the commission shall take into consideration in the apportionment of such liability not only the period of service of said employee with such employer, but shall likewise consider the element of exposure to which the employee was subjected while in the service of such employer maintaining minimum standards, and the apportionment determined only after a hearing, notice of the time and place of which is to be given to each employer alleged to be liable for any portion of such compensation. If the commission find that any portion of such compensation is payable by an employer prior to the employer who is made liable to the total compensation, as provided by this subdivision, it shall make an award accordingly in favor of the last employer, which may be enforced in the same manner

"In adhering to the rule that we will not apportion disabilities in the absence of statutory authority, we deem it appropriate to call to the attention of the legislature what may be a highly inequitable omission from the statute."

Relators argue that nonapportionment will substantially chill the hiring of exposed, but symptomless, persons who thus cannot register a preexisting disability for purposes of employer reimbursement from the special fund. We recognized the "chilling" argument in the context of apportioning liability for preexisting nonoccupational injuries when we were compelled to deny apportionment in *Wallace, supra*. Because our concerns here are parallel, we repeat our suggestion with regard to undiagnosed occupational diseases:

> " * * * In recognition of the understandable reluctance of employers to hire workers with physical defects, the statute encourages the hiring of handicapped persons by permitting employers to be reimbursed under the conditions set forth in § 176.131. If the statute denies access to the special fund * * *, it tends to defeat legislative policy by making it

as an award for compensation." It was repealed by L. 1973, c. 643, § 12.

**3.** The employee died on December 23, 1977, before the appeal was heard. The decision extended temporary total benefits to date of death.

**4.** In *Jensen*, the issue of equitable apportionment was raised and left open for other cases of repetitive minute trauma, but such apportionment was not appropriate on *Jensen's* facts.

*Michels* proposed in dicta the situation in which equitable apportionment might be appropriate for disability from repetitive minute trauma. It was not applicable in that case because no injury occurred prior to coverage by the insurer held liable, but the following test was suggested as a guide: " * * * In the absence of a specific statute on the subject, however, it would appear to us to be applicable only in those rare cases in which substantial and almost uncontroverted medical testimony will permit a precise allocation of responsibility between or among different employers or insurers for the employee's disability." 269 N.W.2d 59.

more difficult for partially disabled employees to continue working in positions which they are capable of handling. Accordingly, it seems advisable to suggest that the legislature amend the law to prevent a result which is not only unfair to employers but detrimental to those employees the statute is designed to protect."

305 Minn. 397, 235 N.W.2d 364. If the purpose of the fund is to encourage hiring of handicapped persons, the legislature might be well advised to provide for access of employers who hire similarly high-risk employees.

■ Relators also contend that the employee's permanent partial disability became compensable as a personal injury prior to the legislature's August 1973 addition of internal organs to the compensable schedule, and thus those benefits are not recoverable. We disagree inasmuch as the employee could not have claimed benefits when symptoms were apparent prior to July 1973 because the occupational disease statute then in effect (Minn.St.1971 § 176.664, repealed by L. 1973, c. 643, § 12) delayed compensability until a disability became total. Since he claimed and recovered benefits only for a time after October 4, 1975, when the lung disability was clearly scheduled under Minn.St. 176.101, subd. 3(40), there is no basis for denying recovery.

■ While relators urge that a subsequent insurer covered Johnson's in October 1975 and should be liable, we believe the failure of the court of appeals to find that it was the insurer at any material time is consistent with the evidence which shows the last asbestos exposure occurred before its coverage began. Since that evidence does not require reasonable minds to adopt a contrary conclusion, the court's finding would not have been disturbed, even if the insurer had been joined as a defendant. See, *Notch v. Victory Granite Co.*, 306 Minn. 495, 503, 238 N.W.2d 426, 433 (1976).

■ The employee's claim for an assessment of attorneys fees against relators under Minn.St. 176.191 is inappropriate as that statute applies, unlike here, only where the sole or primary dispute is between the potentially liable parties. See, *Marsden v. Village of Mabel*, 253 N.W.2d 275, 277 (Minn.1977); *Patnode v. Lyon's Food Products, Inc.*, Minn., 251 N.W.2d 692, 693 (1977); *Lease v. Pemtom, Inc.*, 305 Minn. 6, 15, 232 N.W.2d 424, 429 (1975).

Affirmed.