Susan K. CARLSON, Respondent,

v.

FLOUR CITY BRUSH COMPANY and American Mutual Insurance Company, Respondents,

Flour City Brush Company and Aetna Insurance Company, Relators.

No. 51434.

Supreme Court of Minnesota.

May 8, 1981.

Robert G. Gubbe, Minneapolis, for relators.

C. E. Hektner, Minneapolis, for Carlson.

E. Michael Forde, Minneapolis, for Flour City Brush Company, et al.

AMDAHL, Justice.

Certiorari on the relation of Aetna Insurance Company to review a decision of the Workers' Compensation Court of Appeals directing equal apportionment of liability for medical expenses, disability compensation, retraining benefits and attorneys fees awarded employee between Aetna, the employer's compensation carrier prior to January 1, 1978, and American Mutual Insurance Company, the employer's carrier after that date. We have concluded that the record does not permit apportionment.

In October 1978, employee filed a claim petition against the employer and American Mutual, alleging that she had sustained a personal injury in January 1978, described as degeneration of the L5–S1 disc and related back problems for which she sought disability compensation. On the petition of American Mutual, Aetna was joined as a party and both insurers denied liability.

The evidence at the compensation hearing established that employee, who worked for the employer from 1972 through February 5, 1978, performed work requiring repetitive bending, turning and lifting. During her first years of employment she lifted cartons weighing from 60 to 80 pounds, later lifting boxes weighing up to 25 pounds. She testified that she had never previously injured her back, but began to have pain in her low back and legs about the beginning of November 1977. She went to her family physician, Dr. Patrick Barrett, on November 16, December 7 and December 12, 1977, because of these complaints and received heat treatments. He referred her to Dr. James Priest, a board-certified orthopedist, who saw her on December 13, 1977, diagnosed her problem as a degenerative disc at the L5–S1 level, and prescribed a back brace which she obtained and wore until she terminated her employment.

On January 16, 1978, when employee bent over to pick up a carton, she felt severe pain in her low back which radiated into her legs. She returned to Dr. Priest the following day. His findings were essentially as they had been before, but he advised her to quit work. She did so on February 7, 1978, and was fitted with a body cast the following day which she wore for several months. Dr. Priest performed a spinal fusion to stabilize employee's back in July 1978, but she testified at the hearing that she still has

pain in her back and left leg, cannot sit or stand for a prolonged period, and cannot lift more than 15 pounds.

Dr. Priest expressed the opinion that employee's work each day between 1975 and the day she terminated her employment had involved continuing moderate aggravations of a pre-existing degenerative process. He also said that the work incident of January 16, 1978, was certainly an aggravation of her back condition. Although employee testified that her back condition had worsened in January even before this incident, Dr. Priest could not say whether her work in January 1978 had been a substantial contributing cause to her need for surgery.

Another orthopedic surgeon, Dr. David B. Johnson, diagnosed employee as having a herniated disc syndrome secondary to a degenerated disc at the L5–S1 level. He estimated that she has a 25% permanent partial disability of the back, but also held the opinion that her work activities had nothing to do with her condition because ·the symptoms she developed were due merely to temporary aggravations.

Dr. Virgil Lundquist, a general surgeon, agreed with Dr. Priest that employee's work aggravated her pre-existing degenerative condition, which he thought was probably congenital, and that each day employee worked constituted an aggravation of her condition. Dr. Lundquist thought the incident on January 16, 1978 was a significant contributing aggravation. He also agreed that employee has a 25% permanent partial disability and apportioned responsibility for it, as well as her temporary total disability, medical expenses and need for retraining, 25% to her work activities prior to the incident of January 16, 1978 and 75% to that incident.

On this evidence, the compensation judge made findings, subsequently adopted by the Court of Appeals: that employee had sustained an injury to her lumbar back during the period from 1975 to December 31, 1977 which had manifested disability on November 16, 1977 when she first went to Dr. Barrett; that as a result of this injury, she had been temporarily totally disabled on that date and on December 7 and December 12, when she returned to Dr. Barrett, and on December 13, when she had first consulted Dr. Priest; and that on January 18, 1978, she had sustained a second injury to her lumbar back.[1] He further found that as a combined result of both injuries she incurred specified medical expenses, was temporarily totally disabled until January 1, 1979, has a 25% permanent partial disability of the back, and requires retraining (which she had begun January 2, 1979). He determined that employee was entitled to compensation for 4 days of temporary total disability occurring between November 16 and December 13, 1977, which he directed Aetna to pay, and also awarded her medical expenses, disability compensation, retraining and attorneys fees, for which he apportioned liability 25% to Aetna and 75% to American Mutual.

On appeal by American Mutual, the Court of Appeals rejected the compensation judge's apportionment and apportioned liability equally between the insurers for all disability compensation due after January 16, 1978, and for employee's medical expenses, retraining and attorneys fees, on the grounds that employee "had disability and was unable to work on a number of occasions" while Aetna was the insurer and that justice dictated equal apportionment.

 We agree that apportionment of liability between or among successive employers or insurers is equitable when the record furnishes a reasonable basis for determining the extent to which compensable work injuries sustained in the employ of different employers or during the periods successive insurers are on the risk, contribute to the employee's disability. In this case, however, the record does not furnish support for the finding that employee sustained a personal injury between 1975 and December 31, 1977. This injury was the

1. There is some confusion as to the exact date of the injury. It appears from the record to have occurred on January 16, 1978, the date stated in the majority opinion of the Court of Appeals.

result of the cumulative effect of employee's daily work activities on her degenerative condition, and both medical experts who expressed the opinion that these activities had aggravated that condition said that each day employee worked constituted an aggravation. She worked through February 5, 1978, and there is no evidentiary support for a finding that the injury occurred prior to that date. While logically it could be argued that employee sustained a personal injury on each day she worked because of the aggravation to her condition resulting from that day's work, the only rule capable of practical application is that injuries resulting from repeated trauma or aggravations of a pre-existing condition result in a compensable personal injury when their cumulative effect is sufficiently serious to disable the employee from further work. The four isolated days in November and December 1977 on which employee sustained temporary total disability, although manifestations of disability related to her back condition, do not establish that she then sustained a compensable injury since she continued to work, albeit with a back brace after December 13. *See* Minn.Stat. § 176.121 (1980).

In finding that employee sustained a personal injury between 1975 and December 31, 1977, the Court of Appeals has ignored its own decisions holding that a personal injury which is the consequence of repeated minor trauma or aggravations does not occur until the employee is forced to stop working. Thus, in *Jensen v. Kronick's Floor Covering Service*, 29 W.C.D. 61 (1975), involving disability from carpal tunnel syndrome, the Court of Appeals refused to apportion liability between two employers. Recognizing that the disability which had resulted from repetitive minute trauma, could logically be classified as either a personal injury or occupational disease, the court added that if it was a personal injury, "it occurred when the ultimate breakdown occurred," *id.* at 66, and if an occupational disease, there was "only one occupational disease and one disablement," which occurred when the employee was required to stop work. *Id.* at 67. This court, while recognizing that equitable apportionment might be applicable in some instances of disability from repetitive minute trauma, affirmed. *Jensen v. Kronick's Floor Covering Service*, 309 Minn. 541, 245 N.W.2d 230 (1976).

Similarly, in *Prouty v. City of Duluth*, 29 W.C.D. 550 (1977), the Court of Appeals found that an employee required by his work to sit for prolonged periods sustained a personal injury at the time when his position caused such an increase of pain and symptoms in his previously impaired back that it disabled him from working. Again, in *Gilmore v. Little Jack's Steak House*, 32 W.C.D. 4 (1979), a bartender who developed contact dermatitis over a period in which he worked for several employers was finally required by the condition to give up this work. The Court of Appeals refused to apportion liability for retraining, saying:

> There is no basis for apportioning liability to prior employers as an occupational disease since the employee was not disabled from performing the substantial and material part of his duties as a bartender prior to his last employment with Little Jack's Steak House .... There was no basis for apportioning liability to former employers as a personal injury since the employee's ultimate breakdown and disability and need for removal from the occupation as a bartender did not occur until November 5, 1976.[2]

*Id.* at 9.

Finally, in *Michels v. American Hoist & Derrick*, 269 N.W.2d 57 (Minn.1978), this court affirmed the Court of Appeals' denial of an apportionment claim based upon its finding that the employee sustained only nondisabling injuries to his back due to minute trauma during the period in which the first insurer furnished coverage. The situation here is essentially the same since

---

**2.** The insurer upon whom liability was imposed did not challenge the refusal to apportion liability although it sought review by this court of the retraining award. *Gilmore v. Little Jack's Steak House*, 292 N.W.2d 14 (Minn.1980).

employee did not sustain compensable disability during the period in which Aetna furnished coverage.

In *Michels* we stated in dictum that equitable apportionment might be available in cases involving repetitive trauma when substantial and uncontroverted medical testimony permits a precise allocation of responsibility between or among different employers or insurers for the employee's disability. That test also does not permit apportionment here. The expert testimony with respect to apportionment cannot realistically be viewed as uncontroverted since Dr. Johnson, in denying the existence of a causal relationship between employee's work and her present condition, in effect also denied that apportionment could be made. Moreover, even Dr. Lundquist, the only expert to attempt apportionment, was reluctant to do so. At one point he prefaced his opinion with, "maybe, if I had to pick numbers," and at another point, he admitted his reluctance to apportion responsibility "because basically the reason for her trouble is this incident [of January 16] in my opinion." We do not believe that his opinion, so qualified, furnishes substantial support even for the apportionment made by the compensation judge. It clearly did not support the Court of Appeals' apportionment of liability equally between the insurers. Nor do we find the employee's testimony sufficient to support either apportionment.

We conclude that the decision under review must be reversed insofar as it directs apportionment of liability among the insurers and awards compensation to employee for temporary total disability for the 4 separate days in 1977. The decision is otherwise affirmed.

Employee is allowed $200 attorneys fees.

Reversed in part, affirmed in part.