**Reinhard J. SCHNURRER, Respondent (C0–83–563), Relator (C2–83–564),**

v.

**HOERNER–WALDORF and Ins. Company of North America, Relators (C0–83–563), Respondents (C2–83–564),**

**Hoerner-Waldorf and Liberty Mutual Ins. Company, Respondents.**

**Nos. C0–83–563, C2–83–564.**

Supreme Court of Minnesota.

Feb. 24, 1984.

As Modified March 13, 1984.

Daniel W. Fram, St. Paul, for employee-relator.

George R. Benton, Minneapolis, for employer and insurer-respondent.

Curtis C. Gilmore & Cynthia K. Nyman, Minneapolis, for employer and insurer-relators Insurance Co. of North America.

KELLEY, Justice.

The Workers' Compensation Court of Appeals (WCCA) held that the employee had not proved Gillette-type injuries to his knee and back and vacated findings of a compensation judge concerning temporary total and permanent partial disabilities and their apportionment between insurers. We conclude the evidence as a whole does not support this conclusion and, therefore, reverse.

Employee worked as a paper baler for Hoerner-Waldorf beginning in 1947. The work required him to stand constantly on a cement floor, to climb up and down steps from 50 to 100 times each shift, to bend and crawl around the bales, and to do heavy lifting. In 1972, he sustained an injury to his knee when he fell. After conservative treatment he underwent surgery to remove a torn medial cartilage. Later, additional surgery removed a cyst which had developed in the knee. Employee continued to experience pain in his knee, and back pain began to "come on slowly." Employee's right leg became deformed,

bending outward to the point where he "walked crooked" and wore out the outer heel of his shoe. The pain in his knee went through his upper leg and hip and into his back. He continued to take increasing amounts of pain medication.

In 1979, while at work employee slipped on stairs and hit his knee against one, resulting in a chipped kneecap. Although the medical witnesses disagreed about the seriousness of this injury, the surgeon who had performed employee's knee surgery concluded shortly afterward that employee would need a total knee replacement. Employee missed no time from work but felt both his knee and back pain increased after this incident. By October 1979, he felt his pain was so great that he had to stop working. Although he informed his employer, he did actually remain on the job until January 1980 in order to receive accumulated vacation.

Hoerner-Waldorf and Insurance Company of North America (INA), its workers' compensation insurer in September 1972, admitted the 1972 injury, alleged payment of 17 weeks of temporary total disability and a 10% permanent partial disability to the right leg caused by that injury but denied further liability. Liberty Mutual Insurance Company, the employer's workers' compensation insurer from May 31, 1977 to October 31, 1979, also denied liability, claiming that employee had not sustained a Gillette-type injury and had suffered no loss of time during the period when it covered the employer for workers' compensation.

In addition to the admitted injuries to the right knee in 1972 and 1979, employee also claimed he had sustained Gillette-type injuries to his back and knee as a cumulative effect of his daily work activities on a pre-existing abnormality and degenerative condition in his back and, following the 1972 injury, on his injured knee.[1]

The compensation judge, in addition to finding the specific 1972 and 1979 injuries to the knee, found that employee had sus-

---

1. Employee had rotatory scoliosis and a degen-    erative low back syndrome.

tained Gillette-type injuries to his right knee and low back between 1975 through October 1979. Likewise, he found that employee was totally disabled from January 1980 through October 1981, and that he had a 30% permanent partial disability to the right leg for which he apportioned responsibility 15% to the 1972 injury and 15% to the 1979 injury and the Gillette-type injury. Additionally, he found employee had a 25% impairment of the back for which he apportioned responsibility 12.5% to the underlying scoliosis and 12.5% to a Gillette-type injury. Finally, he ordered the two insurers to share the permanent partial disability to the leg, ordered Liberty Mutual to pay permanent partial disability of the back and ordered each insurer to pay 50% of the temporary total disability compensation and medical costs.

On appeal the WCCA vacated the finding that the employee had sustained Gillette-type injuries, the finding relating to employee's temporary total disability and apportionment and the equal apportionment of liability between the insurers for that compensation and for employee's medical expenses. It further awarded compensation to employee for 30% disability of the right leg and 25% disability of the back as a result of the 1972 injury and directed INA to pay all compensation and medical expenses. Both INA and employee seek review.

We are cognizant of our restrictive standard of review in workers' compensation cases. We have stated repeatedly that we will view the facts in the light most favorable to findings of fact and will not disturb such findings "unless consideration of the evidence and inferences permissible therefrom requires reasonable minds to adopt a contrary conclusion." *Talmage v. Medtronic, Inc.*, 315 N.W.2d 433, 437 (Minn. 1982) (citations omitted); *Guggenberger v. Cold Spring Granite Co.*, 332 N.W.2d 655, 656 (Minn.1983). Applying that standard, we can ascertain no evidentiary support in the record for the WCCA's determination that employee did not sustain Gillette-type injuries. Instead, the evidence compels a finding that employee had sustained such

injuries to his right knee and back by October 1979.

All of the medical witnesses, Dr. Gustafson, the surgeon who had performed the knee surgery, Dr. Michael Davis, and Dr. David Johnson, agreed that employee had sustained significant permanent impairments of his right leg and back. Their assessments ranged from 20 to 30% permanent partial disability of the leg and from 20 to 25% permanent partial disability of the back. Dr. Gustafson expressed the opinion that employee's work activities from 1975 on had been a substantial contributing factor to both disabilities. Dr. Davis attributed half of the leg disability to employee's work between 1972 and 1979, and Dr. Johnson attributed a third of the leg disability to employee's work during that time. Both attributed half of employee's back disability to his work from 1947 to 1979. Thus, while the medical witnesses offered varying opinions on the extent of employee's permanent disabilities, they agreed that the arduous work employee had performed had contributed substantially to those disabilities. In light of these opinions and employee's uncontradicted testimony that he found it increasingly more difficult and painful to perform his work, we conclude that the finding that employee had sustained no Gillette-type injuries is manifestly contrary to the evidence. Consequently, we reverse that finding and the compensation award based thereon and remand with direction to the WCCA to enter findings and an award conforming to the evidence.

Liberty Mutual, the employer's insurer from May 31, 1977, to October 31, 1979, claims that even if employee sustained Gillette-type injuries he could not have sustained them before January 5, 1980, his last day of work. The claim is based on Liberty Mutual's narrow reading of our language in *Carlson v. Flour City Brush Co.*, 305 N.W.2d 347 (Minn.1981). There we found that the evidence did not support equitable apportionment of liability between successive insurers for compensation awarded an

employee who sustained a specific back injury on January 16, 1978, and also sustained a Gillette-type injury due to the repeated bending, turning, and lifting required by her work over a 6-year period. The employee's physician advised her to quit work after she sustained the specific injury, and she did so a few weeks later. Because of the testimony of both medical experts that her work activities to the day she quit constituted an aggravation of a degenerative condition, we held there was no evidentiary support for a finding that the Gillette-type injury was sustained before that date. We added:

> While logically it could be argued that employee sustained a personal injury on each day she worked because of the aggravation to her condition resulting from that day's work, the only rule capable of practical application is that injuries resulting from repeated trauma or aggravations of a pre-existing condition result in a compensable personal injury when their cumulative effect is sufficiently serious to disable the employee from further work.

*Carlson*, 305 N.W.2d at 350.

 In this case, however, there are several ascertainable events, not found in *Carlson*, from which it may reasonably be inferred that by October 1979 the combination of the disability resulting from employee's 1972 injury and that resulting from the trauma caused by employee's work, particularly in the bailing room, was great enough "to disable the employee from further work." Among those events are the act of employee's foreman in late 1978 of relieving employee of his regular work as a baler because of his physical condition, Dr. Gustafson's conclusion shortly after the April 1979 knee injury that employee required a total knee replacement, employee's recognition by October 1979 that he could not continue to work because of the pain associated with even the lighter work to which he had been assigned, and his informing the employer in October 1979 that he had to quit. This evidence clearly supports a finding that employee had sustained Gillette-type injuries by October 1979, in spite of the fact that he held out at his lighter work for a short time longer in order to avoid losing vacation pay. Contrary to Liberty Mutual's contention, *Carlson* does not require an automatic determination that employee sustained Gillette-type injuries on the day he quit. The time by which he had sustained those injuries should be determined on all the evidence bearing on the issue.

We reverse the finding that employee did not sustain Gillette-type injuries to his knee and back and remand to the Workers' Compensation Court of Appeals for reconsideration. Respondent Reinhard J. Schnurrer is awarded $400 attorney fees.

Reversed and remanded.